Argued October 18; modified November 14, 1944

# MARVIN ET AL. *v.* MANASH ET AL.

(153 P. (2d) 251)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Ben Anderson,* of Portland (Wm. P. Lord, of Portland, on the brief), for appellants.

*Edwin D. Hicks,* of Portland, for respondents and cross-appellants.

KELLY, J.

This suit adds another chapter to the controversy between the two rival labor organizations involved in the case of *Quinn, et al. v. Marvin, et al.,* 168 Or. 52, 120 P. 2d 227. In the Quinn-Marvin case both labor organizations, namely, the Furniture Makers and Finishers Local Union No. 1090, which was chartered

by the Brotherhood of Painters, Decorators and Paperhangers of America, affiliated with the American Federation of Labor, and Furniture Makers Local Union No. 1090 affiliated with the United Furniture Workers of America, which in turn is affiliated with the Congress of Industrial Organizations, were claiming the right to the possession and control of the funds, records, files and other personal property of the Furniture Makers and Finishers Local Union No. 1090.

In the case at bar, plaintiffs are claiming that, notwithstanding the fact that they have become members of the organization affiliated with the Congress of Industrial Organizations, their membership in an unincorporated association known to this record as the Doernbecher Workers Protective Association, the membership of which is declared by its constitution to be coextensive with the membership of said Furniture Makers and Finishers Local Union No. 1090, and that as such alleged members of the A. F. L. organization plaintiffs' action and that of those whom plaintiffs represent in voting upon a motion to distribute the fund in suit, the same being a "strike fund" created for the benefit of the members of said Furniture Makers and Local Union No. 1090, should be given effect and said fund should be so distributed.

Defendants claim that plaintiffs, and those for whose benefit plaintiffs are acting, forfeited their membership in said unincorporated association when their membership in said Furniture Makers and Finishers Local Union No. 1090 terminated.

One of the provisions of said unincorporated association's constitution and by-laws is as follows:

"Membership in this association shall be coextensive with membership in Furniture Makers

and Finishers Union Local 1090. No person not a member in good standing of Local 1090 shall be eligible for membership in this association, but all persons who are members in good standing of Local 1090 shall be eligible for membership in this association.''

It is the contention of plaintiffs that the above quoted provision merely prescribes the qualification prerequisite to membership in said unincorporated association and does not imply that such membership, when once gained, will be forfeited by those who cease to be members in good standing in said Furniture Makers and Finishers Union Local 1090.

There are authorities holding that the term, eligible to an office, means eligible to be elected to the office at the date of the appointment or election. *State v. Christenson,* 84 Utah 185, 35 P. (2d) 775, 779; *Beatty v. Hartwell,* 217 Ala. 239, 115 So. 164.

There are other authorities holding that such term signifies legal qualification for that office, that is qualification to hold office as well as to be chosen therefor. *State ex rel. Nourse v. Clarke,* 3 Nev. 566, 570; *State ex rel. Sundfor v. Thorson,* 72 N. D. 246, 6 N. W. (2d) 89, 143 A. L. R. 599; *Hoy v. State ex rel. Buchanan,* 168 Ind. 506, 81 N. E. 509, 11 Ann. Cas. 944.

There are other authorities holding that it is susceptible of both meanings, and that in each case it is necessary, in accordance with a well settled canon of construction, to give the term the meaning which will carry out the purpose of the law. *State ex. rel v. Dunn,* 277 Mo. 38, 209 S. W. 110; *Demaree v. Scates,* 50 Kan. 275, 32 P. 1123, 20 L. R. A. 97, 34 Am. St. Rep. 113; *Kirkpatrick v. Brownfield,* 97 Ky. 558, 31 S. W. 137, 29 L. R. A. 703, 53 Am. St. Rep. 422.

■ In determining the meaning of the term eligible for membership, as used in the instant case, effect must be given to the provision requiring the membership of the unincorporated association to be coextensive with membership in the Furniture Makers and Finishers Local Union No. 1090.

The Oxford English Dictionary thus defines coextensive: "Extending over the same space of time, of equal extension; coinciding in limits."

Similarly, Funk & Wagnalls New Standard Dictionary defines it as—"Having equal extension, having the same limits or extent."

The Oxford Dictionary defines "Extension of a term or concept" as "its range as measured by the number of objects which it denotes or contains under it."

■ In view of the flexibility of the term eligibility and the approved meaning of the term coextensive, we think the membership of the unincorporated association must be and continue to be the same, neither larger nor smaller than that of Local 1090 affiliated with the A. F. L.

This results in an affirmance of the trial court's decree in so far as it denies the relief sought by plaintiffs' amended complaint.

■ The action of those who controlled the proceedings which ensued after the presiding officer had adjourned the meeting of September 27, 1940, at which time the purported action was taken authorizing the distribution of the fund in suit, was ineffective because the course thus attempted was and is contrary to the method of procedure prescribed by the constitution and by-laws of the unincorporated association. This

is aptly reflected in the opinion of the learned trial judge thus:

"The meeting of September 27, 1940, was the regular monthly meeting of the D. W. P. A. It was presided over by Fred Manash, the president of D. W. P. A. The evidence clearly establishes a controversy of considerable proportions, encouraged not only by verbal argument, but fisticuffs as well, assuming the proportions of a 'riot'; in the midst of which disorder the president adjourned the meeting, being unable to maintain order. Thereafter those remaining resumed the meeting with temporary officers and proceeded to take the action in question in voting repayment to the donors of the D. W. P. A. funds. That the meeting was truly uncontrollable and the president justified in the action he took in adjourning the same is established by the evidence of the minutes (Exhibit 2) and the testimony of the witnesses Manash and Shankles. The subsequent manner in which the meeting was conducted, the action taken in voting to suspend all officers and elect new ones, in striking Article 17, Section 2 of the Constitution and By-laws, serve to indicate the reckless disregard of procedure as provided by the Constitution and By-laws (Article 6, Section 4 and 5). The presiding officer attempted to conduct the meeting and maintain order as directed by Article 8. He refused to put the motion to suspend all officers and elect new ones, clearly contrary to the method of accomplishing such result provided by the Constitution and By-laws, and thereupon disorder followed. It was impossible to transact business in an orderly manner, and the presiding officer did the only thing open to him,—he adjourned the meeting. Had he proceeded to put an appeal from the ruling of the chair, and failed to be sustained, the action taken clearly would have been illegal."

■ The trial judge also recognized the rule that in the absence of any provision in the laws of an associa-

tion prescribing the manner in which its meetings shall be conducted, common parliamentary principles in use by all deliberative assemblies may be resorted to in considering the regularity of the proceedings. 7 C. J. S., Subject: Associations, p. 44, Sec. 18, subdiv. d, citing *Ostrom v. Greene,* 161 N. Y. 353, 55 N. E. 919, affirming 52 N. Y. S. 1147, 30 App. Div. 621, affirming 45 N. Y. S. 852, 20 Misc. 177; and *Mixed Local of Hotel and Restaurant Employees Union Local No. 458 v. Hotel and Restaurant Employees International Alliance and Bartenders International League of America,* 212 Minn. 587, 4 N. W. (2d) 771. See also 46 C. J., Subject: Parliamentary Law, p. 1377, § 3, citing *Witherspoon v. State,* 138 Miss. 310, 103 So. 134.

■ The members of the Doernbecher Workers Protective Association, as members of the Furniture Makers and Finishers Local Union No. 1090, are controlled by the constitution and by-laws of said Local 1090 and those of Brotherhood of Painters, Decorators and Paperhangers of America. The first paragraph of the constitution of said Local 1090, after stating its purpose, is as follows:

"The meetings of this Union shall be governed by the Roberts Rules of Order unless otherwise specified by this Constitution and By-laws";

and, under the subject of "Parliamentary Rules" *inter alia* the Constitution and By-laws of said Brotherhood of Painters, Decorators and Paperhangers contain the following:

"Rule 5. All questions of a parliamentary nature not provided for in these rules shall be decided by Roberts' Rules of Order."

■ We think, therefore, that the trial judge was fully warranted in holding that, as applied to the case

at bar, Robert's Rules of Order could be deemed to state common parliamentary principles in general usage without any other affirmative showing to that effect.

As stated by the trial judge, section 58 of that authority, among other things, declares the following rule of procedure:

> "In case of fire, riot, or very serious disorder, or, other great emergency, the chair has the right and the duty to declare the assembly adjourned to some other time (and place if necessary), if it is impracticable to take a vote, or in his opinion, dangerous to delay for a vote." Robert's Rules of Order Revised, (1921 Ed.) p. 237, Sec. 58.

We think that the learned trial judge was justified in saying in his opinion: "Clearly the situation presented here was one not only justifying, but requiring the action taken."

It follows that the attempt by those who remained after the adjournment of the meeting of September 27, 1940, to resume business and disburse the fund in suit by distributing it to its alleged donors was ineffective and of no validity.

■ We are also in accord with the statement in the opinion of the trial judge concerning the meeting of September 28, 1940. We quote as follows therefrom:

> "The meeting of September 28 was a meeting of Local 1090" (affiliated with A. F. L.), "called for the specific purpose stated in the notice 'to take action on new proposed contract' (Exhibit 9). Clearly, this meeting was limited to the affairs of Local 1090 and the specific purpose thereof, being a special meeting. It could and did not act legally or authoritatively upon the 'strike funds'. By no magic alchemy was it converted into a meeting of

the D. W. P. A. even though membership and general setup and purpose were identical. It was powerless, therefore, to transact the business of the D. W. P. A.''

We concur with the learned trial judge in the above quoted excerpts from his opinion.

Article 17 of the Constitution and By-laws of said unincorporated association provides as follows:

''Article XVII—Dissolution

Section 1. In the event this association shall dissolve, the funds and property of the association shall be liquidated and shall first be used to pay all outstanding obligations of the association and the remainder shall be divided equally among the membership of the association as of the date of dissolution.

Section 2. This association shall not be dissolved so long as twenty-five (25) members oppose dissolution.''

■ This provision is controlling upon the members until it is amended or repealed by approved procedure. No such procedure was taken or attempted. The record indicates that any attempt to dissolve the association without first amending or repealing the foregoing provision of its constitution and by-laws would have been futile for the reason that there were more than twenty-five members who would oppose it.

■ We have held that by joining an affiliate of the Congress of Industrial Organizations a member of an organization affiliated with the American Federation of Labor forfeits his membership in such A. F. L. organization. *Quinn, et al. v. Marvin, et al.,* supra.

■ In the instant case, we hold that such forfeiture of membership in Local 1090 affiliated with the A. F. L. results *ipso facto* in forfeiture of membership in the

unincorporated association known to this record as Doernbecher Workers Protective Association.

The trial court made an order allowing each of the following named persons the sum of $250 as compensation for their services as trustees of the fund in suit, to-wit: Fred Manash, Robert Marvin, Jack Shankles, Richard Shultz and C. J. Drake. As we understand the record, there were but three trustees of the fund in suit.

Plaintiffs' amended complaint, after setting forth the names of the depositaries and the respective amounts of the fund in suit deposited with such depositaries respectively, states in paragraph IX:

> "That in making said deposits the said defendant banks received instructions from the Doernbecher Workers Protective Association that disbursements or withdrawals from said respective account could be made only over the signatures of Fred Manash, Robert Marvin and Jack Shankles."

Paragraph IX of plaintiff's complaint was expressly admitted in defendant's answer and crossbill, which answer and crossbill was filed sometime subsequent to the filing of plaintiffs' amended complaint; and we find no other answer of defendants, hence, we feel warranted in assuming that the admission above mentioned refers to paragraph IX of plaintiffs' amended complaint.

■ The record discloses that defendant Manash made the motion to distribute the fund in suit, which is shown to have been one of the reasons for the institution and prosecution of this suit. Plaintiffs Marvin and Shankles not only attempted to distribute the fund in suit, but have sought by this suit to procure a decree of distribution thereof. We do not construe this course

as constituting ground for an allowance of compensation for services either in creating, augmenting or preserving a trust fund. For that reason, the decree of the circuit court is vacated, annulled and set aside in so far as it directs payment of $250 to each of the five persons named therein as trustees. In all other respects, the decree of the circuit court is affirmed.

It is further ordered that neither party hereto recover costs or disbursements upon this appeal.