Argued and submitted August 7, 2018; convictions on Counts 3 and 5 reversed, remanded for resentencing, otherwise affirmed February 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROY RICHARD PETERSON,
*Defendant-Appellant.*

Grant County Circuit Court
150125CR; A163668

482 P3d 68

Defendant appeals a judgment convicting him of first-degree theft (Count 2), aggravated first-degree theft (Count 3), and possession of a stolen vehicle (Count 5). The charges related to funds, equipment, and vehicles that defendant acquired as chief of a voluntary fire department. Defendant was convicted of Counts 3 and 5 for refusing to transfer possession of firefighting equipment and vehicles when members of the department formed a tax-funded, rural fire protection district. On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal (MJOA) on Counts 3, in which he asserted that he had an ownership interest in the equipment and vehicles and that the district did not. *Held*: The trial court erred in denying defendant's MJOA. Because the district did not own the property at the time of defendant's alleged offenses, the evidence was insufficient to establish every element of Counts 3 and 5.

Convictions on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.

Paul G. Crowley, Senior Judge.

Benjamin Boyd argued the cause for appellant. Also on the brief were D. Zachary Hostetter and Hostetter Law Group, LLP.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

DeHOOG, P. J.

Convictions on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.

## DeHOOG, P. J.

Defendant appeals a judgment convicting him of first-degree theft, ORS 164.055 (Count 2), aggravated first-degree theft, ORS 164.057 (Count 3), and possession of a stolen vehicle (PSV), ORS 819.300 (Count 5). Those charges related to funds, equipment, and vehicles that defendant acquired as chief of a voluntary fire department (the department). Defendant was convicted after submitting false invoices to the state to procure state grant funding and refusing to transfer possession of firefighting equipment and vehicles (the department property) when members of the department formed a tax-funded, rural fire protection district (the district or MRFD). Defendant's opening brief raises four assignments of error, all directed at his convictions for aggravated theft and PSV.[1] In his first assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal (MJOA) as to Counts 3 and 5, because, as a matter of law, he could not have stolen the department property—nor could his possession of that property constitute PSV—when he had an ownership interest in the property and the district, the purported victim of his offenses, did not. The state responds that the evidence was sufficient for the jury to find that, at the time of the alleged offenses, defendant had no ownership interest in the department property and that the district, in fact, was its owner. For the reasons that follow, we agree that the trial court committed reversible error in denying defendant's MJOA.[2] Accordingly, we reverse defendant's convictions on Counts 3 and 5, remand for resentencing, and otherwise affirm.

---

[1] In supplemental briefing, defendant contends that the trial court committed plain and structural error as to all of his convictions when it instructed the jury that its verdicts need not be unanimous. We reject that argument. *State v. Dilallo*, 367 Or 340, 342, 349, 478 P3d 509 (2020) (declining to exercise discretion to review, as plain error, the trial court's instruction that the jury could convict the defendant without reaching unanimity when the defendant did not preserve an objection to that instruction and the record did not reveal whether the jury's guilty verdicts were unanimous). Defendant's conviction under Count 2 is not otherwise at issue in this appeal.

[2] That conclusion obviates the need for further consideration of defendant's remaining assignments of error, which either reprise the arguments he makes under his first assignment or raise issues related only to the convictions we reverse.

In reviewing the denial of an MJOA, we view "the evidence in the light most favorable to the state" to determine whether "a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (internal quotation marks omitted). We state the facts accordingly.

In 2001, a large fire spread through defendant's hometown of Monument, Oregon, burning thousands of acres and multiple structures. In response, defendant, who had been fighting fires since the age of 16, began organizing the department to protect the rural region against future fires and to supplement the fire protection provided by governmental agencies, which did not fight structure fires in that region. Defendant formed the group with the goal of becoming a recognized, tax-funded fire district. *See* ORS 478.001(1)(d) ("'District' means a rural fire protection district proposed to be organized or organized under, or subject to, [ORS chapter 478]."). Although the group established a "steering committee" that helped guide the direction of the department, there were no bylaws or any other form of governing agreement that controlled the group's operations. Instead, defendant spearheaded the group's efforts and was the self-appointed organizer and acting fire chief of the group.

Acting in that capacity, defendant opened a checking account for the department to which only he had access. Between 2001 and 2012, defendant procured firefighting equipment and vehicles for the department's use. Defendant acquired the property through various means, including donations, scavenging efforts, and purchases defendant made with annual state and federal grant funding. The property at issue on appeal was acquired through such grants. Oregon Department of Forestry (ODF) employees who administered the grant programs testified that ownership of property acquired with grant funds vests in the organization awarded the grant. Defendant kept the equipment that he acquired for the department at his private residence.

Despite the group's goal of establishing an official fire district, the department remained a voluntary organization

for a number of years. However, in 2007, another large fire hit the region and reinvigorated community interest in establishing a tax-based rural fire protection district. As a prerequisite to circulating a petition to form an official district, defendant formed an advisory committee, naming all of the department's volunteer members to the committee and designating himself the committee chair. Although the county initially rejected their petition, defendant successfully challenged that denial after using some of the department's grant money to hire an attorney. Due to the delays of litigation, however, the department's petition for formation of a district was not approved by county officials and put to a county-wide vote until November 2012. The county voted in favor of the proposed district, and, shortly thereafter, on November 21, 2012, the Grant County Court issued an order officially forming and establishing the Monument Rural Fire District (MRFD).[3]

Once formed, the district was initially governed by a board composed primarily of members of the department. Defendant was not on the board, but he was considered the district's fire chief. The district's initial board soon disbanded. In December 2012, after having met only twice, the entire board resigned, citing differences in opinion with defendant in his role as fire chief. Those differences arose when the board made preliminary efforts to operate the district and made certain demands with which defendant did not agree. For example, rather than defendant's personal post office box, which had served as the department's mailing address, the board attempted to designate the home address of the new board president as the district's official address. Additionally, the district board demanded that defendant turn over the department's checkbook and financial records and that defendant no longer use district vehicles for personal purposes. In response, defendant expressed frustration that the board was, in his opinion, improperly running the district by holding meetings at a private residence and

---

[3] Even though Monument Rural Fire District is the official name of the district established in 2012, both the department and the district were referred to interchangeably as the Monument Rural Fire Department or the Monument Rural Fire District throughout their respective existences. To avoid confusion, we refer to the volunteer organization as "the department," and the county-approved district as "the district" or MRFD.

attempting to conduct business without having filed the district's articles of incorporation with the Secretary of State, a task the board did not complete until January 2014. At trial, members of the board also testified that, in addition to expressing those concerns, defendant had told the board "'Well, if that's the way you guys feel, I'll just step down.'"[4] Despite uniformly testifying to that understanding of events, the board's entire membership subsequently resigned, citing their differences with defendant as fire chief.

Following the board's resignation, defendant continued fighting fire with the department property. In January 2013, a month after the resignations, the county court appointed three new members to the district board, who then brought on two other individuals to fill the board's remaining vacancies. Although defendant applied to be on the board, he was not selected. Defendant eventually turned over the volunteer department's ledger and checkbook as requested, but he retained the department property.

When the new board held its first meeting in February 2013, it formally appointed a district fire chief. Defendant attended that meeting, but he did not express interest in being appointed chief. Instead, the position went to the only person who had expressed interest. At trial, the board's president testified that, as of that time, he understood that defendant no longer had any involvement with the district.

At the time of its February 2013 meeting, the board was aware that the ownership of the department property was in dispute and knew that defendant was keeping it at his residence. As of that date, no action had been taken to transfer title to any of the department property to the newly established district. Nevertheless, the board asked at the February 2013 meeting that defendant turn the department property over to the district. According to the testimony of the district's fire chief, defendant declined, asserting that "'everyone needed to get together and figure out the ownership interests first.'" No such meeting took

_____

[4] At trial, defendant denied having made that statement and said that he had not resigned from his position with the department.

place, and, according to defendant, he continued operating the department formerly known as the Monument Rural Fire Department under the new name of "Top Rural Fire Department" or "Top Rural Fire District." Defendant went so far as to transfer title of some of the department vehicles to Top Rural. Days later, on February 21, 2013, the district fire chief sent defendant a letter demanding that he "return any and all belongings" of the Monument Rural Fire Department in his possession. Defendant did not comply with that request. In October 2013, the state police seized the department property from defendant's land pursuant to a warrant. As relevant here, defendant subsequently was charged with aggravated first-degree theft and PSV, alleged to have occurred "on or about February 21, 2013," the date of the district chief's demand.

At trial, the state's theory was that defendant had committed the charged offenses when he withheld the department property from the district after receiving its February 21, 2013, demand letter. Defendant's primary argument in response was that the case concerned a civil property dispute, not criminal wrongdoing. At the conclusion of the state's case-in-chief, defendant moved for judgment of acquittal on the charges of aggravated first-degree theft and PSV. Defendant argued that he had an ownership interest in the department property that precluded the state's assertion that it was stolen, because, he contended, ownership of property held by a voluntary association, such as the department, vests jointly in the association's individual members. Consequently, defendant argued, he could not be convicted for having stolen property from the district—or for being in possession of property that was stolen—because the prosecution had not proved that the district had an ownership interest in the property superior to his own. Defendant also asserted that, because title and ownership had already vested in the membership of the department as a voluntary association, the mere creation of an official district did not result in a transfer of those interests to the district. Finally, defendant argued that the district could not have owned the department property at the time of the alleged offenses, because it had not yet filed its articles of incorporation and therefore lacked legal capacity to own property. As a result,

defendant argued, the prosecution had not met its evidentiary burden as to the challenged charges.

The court denied defendant's MJOA, ruling that the issues were matters for the jury and emphasizing the prosecution's evidence that the department had "morphed into" the district. The jury ultimately convicted defendant for first-degree theft, aggravated first-degree theft, and PSV. Defendant now appeals.[5]

In his first assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal, which, as noted, was premised on a lack of evidence that the department property was stolen. Although defendant's arguments rely on a somewhat involved analysis of various statutes and common law principles governing legal entities, property rights, and theft, those arguments reduce to the rather straightforward assertion that he could not be convicted on the challenged counts because (1) he had an ownership interest in the department property at the time of the alleged offenses and (2) the district did not. We proceed to consider those arguments.

Defendant first asserts that, as a "voluntary, unincorporated association," the department "had no legal existence separate from its members." *See Cousin v. Taylor et al.*, 115 Or 472, 475, 239 P 96 (1925) (a "voluntary, unincorporated association, which was not organized to conduct business for a pecuniary profit, and possessed none of the elements of a partnership *** had no legal existence distinct from its membership"). Defendant argues that, rather than the department owning anything, its members, including defendant himself, held, as individuals, title and ownership of the department's vehicles and equipment. *See State of Oregon v. Rice*, 206 Or 237, 242, 291 P2d 1019 (1956) ("[I]t must be acknowledged that title and ownership of the property of a voluntary association rests in the individual members, subject only to the right of enjoyment as agreed among

---

[5] Defendant's first-degree theft conviction (Count 2) related to his receipt of grant funds in his capacity as the department's fire chief. Defendant did not challenge the sufficiency of the evidence to support that conviction, and, other than the supplemental assignment of error that we have already rejected, that conviction and the facts underlying it are not at issue on appeal.

themselves."). As a result, defendant argues, he, and not the department, had an ownership interest in the department property.

Second, defendant argues that the district had no such interest in the department property at the time in question. In support of that argument, defendant notes that all of the property had been acquired before the district came into existence in November 2012. Defendant further argues that, just because the department and the district shared common membership, it does not follow that the district acquired ownership rights over the department's assets. *Cf. Marvin v. Manash*, 175 Or 311, 320, 153 P2d 251 (1944) ("even though membership and general setup and purpose were identical," a labor union "was powerless * * * to transact the business" of a distinct unincorporated association (internal quotation marks omitted)). Further yet, defendant argues that, at the relevant time, the district lacked the legal capacity to own property. For support, defendant looks to ORS 198.782, which prohibits a municipal corporation from "transact[ing] business of any kind until a notice of incorporation or formation has been filed with the Secretary of State by that corporation." In defendant's view, an entity that cannot transact business cannot acquire property rights from another entity, and, here, because the district did not file its articles of incorporation until January 2014, it could not have acquired an ownership interest in the department property before then. Defendant concludes, therefore, that, because he had an ownership interest in the department property in February 2013 and the district did not, he could not have committed theft from the district when he refused to turn over the department property in response to the district's demand, nor could any vehicle that he retained be deemed "stolen."

In contrast to defendant's legal arguments, the state characterizes the relevant question as an issue of fact, namely, whether "the record contain[s] sufficient evidence from which a rational trier of fact could find that the [district] was the 'owner' of the firefighting vehicles and equipment that were the subject of defendant's convictions for aggravated first-degree theft and possession of a stolen vehicle." The state argues that "the record contains

ample evidence from which a jury could have found that the informal fire department *became* the district, and that defendant's ownership interest in the property therefore ceased when he ended his involvement with the district." (Emphasis in original.) Contrary to defendant's argument that the department and the district were two distinct entities, the state argues that there was sufficient evidence in the record for the jury to conclude that, after the district was established in November 2012, there was only a single entity and that the department had ceased to exist. The state further argues that the record demonstrates that defendant ended his affiliation with that entity, after it had become the district, when he offered his resignation at the December 2012 meeting. Therefore, the state argues, when the newly appointed fire chief requested in February 2013 that defendant return the department property, defendant had lost any ownership interest that he may previously have held and committed the charged crimes when he failed to comply with that request.

The state contends that, in arguing that the court should have granted his motion for judgment of acquittal, defendant ignores many competing inferences that were available on the record. The state notes that defendant's goal from the outset in 2001 was to establish an official rural fire protection district. The state emphasizes the many efforts that defendant undertook to achieve that goal, including filing the required petition and hiring an attorney to contest its initial rejection by the county. The state also points out that, after the district was established and formed in November 2012, defendant appeared to briefly serve as the district's fire chief before stepping down due to disagreements with the district board. Lastly, the state argues that a "rational juror could conclude that defendant's act of handing over control of the [department's] checking account to the board suggests that defendant understood that the account belonged to the district" and that the department and "the official district were one and the same." Therefore, the state concludes, a rational juror could have found that the voluntary department became an official district, and not "a *second* fire department for others to run as an official fire district" while defendant continued with the voluntary

department. (Emphasis in original.) As a result, the state asserts, the trial court did not err in denying defendant's MJOA, because there were sufficient facts in the record for the jury to find that defendant committed the charged offenses by unlawfully withholding the department property in February 2013.

As noted, when reviewing the denial of an MJOA, we must view the facts in the light most favorable to the state and determine whether, when so viewed, the record contains "sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *Hedgpeth*, 365 Or at 730 (internal quotation marks omitted). However, "[w]hen legal disputes are encompassed in the arguments for and against a motion for judgment of acquittal, we resolve them as we would any other legal question." *State v. Turnidge (S059155)*, 359 Or 364, 455, 374 P3d 853 (2016), *cert den*, 137 S Ct 665 (2017). Here, the parties dispute whether defendant's first assignment of error raises questions of fact or law. We conclude that the dispositive question is one of law and that the trial court incorrectly decided that question in denying defendant's MJOA; accordingly, the trial court erred when it denied defendant's motion.

We begin our analysis with a review of the elements that the state had to establish to convict defendant of aggravated first-degree theft, ORS 164.057, and PSV, ORS 819.300. First, as relevant here, ORS 164.057(1) provides that "[a] person commits the crime of aggravated theft in the first degree" if the person "violates ORS 164.055 with respect to property" that has a value of $10,000 or more. The internally referenced statute, ORS 164.055, defines theft in the first degree and, in turn, relies on the definition of theft provided in ORS 164.015.[6] And, in relevant part, ORS 164.015(1) states that a person commits theft when the person "[t]akes, appropriates, obtains or withholds * * * property from an owner thereof" with the "intent to deprive

---

[6] As relevant to this appeal, ORS 164.055(1)(a) provides that "[a] person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and * * * [t]he total value of the property in a single or aggregate transaction is $1,000 or more[.]"

another of property or to appropriate property to the person." As implicated by defendant's MJOA and his argument on appeal, the critical element of aggravated first-degree theft is the requirement that the property at issue be appropriated or withheld "from an owner thereof." That is, the state was required to prove that the district, as the purported victim of defendant's theft, was the owner of the department property when defendant rejected the district's demand to turn that property over.

Second, ORS 819.300 provides that "[a] person commits the offense of possession of a stolen vehicle if the person possesses any vehicle which the person knows or has reason to believe has been stolen." Although ORS 819.300 does not incorporate ORS 164.015 or otherwise expressly include theft in its definition of PSV, there is no apparent dispute that, to establish the "stolen" element of that offense, the state was required to prove that one or more of the firefighting vehicles in defendant's possession had been the subject of a theft within the meaning of ORS 164.015.[7] That, like the allegation of aggravated first-degree theft, required the state to establish that the property at issue was not defendant's but, instead, property of another. The state understood that burden and, accordingly, pursued the theory at trial that the district owned the department property in February 2013. As the state asserted at trial and maintains on appeal, when, at that time, defendant refused to hand the department property over as the district requested, he committed theft by unlawfully withholding the district's property and committed PSV by continuing to possess one or more firefighting vehicles that he had stolen from the district. At the time of defendant's MJOA, the trial court agreed that the jury could find that the department property belonged to the district, based on the court's understanding that the department had "morphed" into the district and, presumably, assumed ownership of the department's property. We conclude otherwise.

---

[7] We note that both parties requested the same uniform jury instruction regarding this charge, UCrJI 1823. In giving that instruction, the trial court informed the jury that, to find defendant guilty of the PSV charge, it must find that defendant had "possessed a vehicle that was the subject of theft" and that defendant "knew or believed the vehicle was the subject of theft."

In reaching our conclusion, we agree with defendant that the district could not have been the owner of the department property in February 2013, when the alleged offenses occurred. That conclusion follows in large part from the statutes that governed the formal establishment of MRFD as a rural fire protection district. First, ORS chapter 478 broadly governs rural fire protection districts within counties. Second, because they are statutorily designated as "district[s]," rural fire protection districts are subject to the formation provisions of ORS chapter 198. *See* ORS 198.010(14) ("A rural fire protection district organized under ORS chapter 478" is a district subject to ORS chapter 198.); ORS 198.705(8) ("'District' has the meaning given that term in ORS 198.010[(14)]."); and ORS 198.715 ("[A]ll district formation or change of organization proceedings shall be initiated, conducted and completed as provided by ORS 198.705 to 198.955."). Third, under ORS chapter 297, made applicable here by ORS 198.782 (the text of which is set out below), a rural fire protection district also is a "municipal corporation" subject to its terms. ORS 297.405(5)(c) (defining "municipal corporation" to include districts).

Two provisions within ORS chapter 198 particularly inform our analysis. First, in part, ORS 198.820(1) provides that, after a district has been approved by a county vote, the county court or board of county commissioners "shall enter an order establishing and forming the district." *See also* ORS 198.820(3) ("From the date of the formation order the district shall be considered established.").[8] Second, ORS 198.782 dictates when a municipal corporation may begin conducting business. In full, ORS 198.782 provides:

"No municipal corporation, as defined in ORS 297.405, incorporated or formed in this state after October 3, 1979, shall receive or disburse moneys or transact business of

---

[8] Defendant argues that, under ORS 65.051, the district's corporate existence did not begin until it filed its articles of incorporation. *See* ORS 65.051 (explaining commencement of corporate existence for nonprofit corporations). However, the provision that defendant cites does not apply to corporations formed under other statutes, as is the case here. *See* ORS 65.074(2) ("A corporation that is subject to regulation under another statute of the state may not be incorporated under this chapter if the corporation must be organized under the other statute.").

any kind until a notice of incorporation or formation has been filed with the Secretary of State by that corporation."

Applying those statutes to the facts of this case, we find no support for the state's position that MRFD had acquired ownership of the department property by the time that its new chief sent defendant the demand letter in February 2013. We recognize that the record reflects that the district was formed and established by order of the county court under ORS 198.820(1) in November 2012, well before the time of defendant's alleged crimes. Contrary to the state's fact-based argument, however, nothing in the record supports the view that, in recognizing MRFD as a formal fire protection district, the county somehow converted—or "morphed," to use the trial court's term—the voluntary department into the district or that the order establishing the district otherwise extinguished the department as a matter of law.

Moreover, whether or not ownership of the department property vested in its individual members, there is no dispute that the department initially owned the allegedly stolen property.[9] As the ODF employees that ran the firefighting grant programs testified, ownership and title to equipment and supplies purchased with grant funds, as the department property was, vests in the entity that receives those funds. And, as the district's board members acknowledged at trial, no action had been taken to transfer ownership or legal title from the department to MRFD before the district demanded the equipment from defendant in February 2013.

Furthermore, nothing in ORS 198.820(1) or in any other provision of law that the state identifies suggests that, in "establishing and forming the district," the county court or board of county commissioners somehow effected such a

---

[9] Notably, it is undisputed that, due to the nature of the grant programs that funded the department's acquisition of the property at issue, ownership and title to the property initially vested in the department. Moreover, as a member of that voluntary, unincorporated department, defendant shared those property interests with other members of the association. *See Rice*, 206 Or at 242 ("[I]t must be acknowledged that title and ownership of the property of a voluntary association rests in the individual members, subject only to the right of enjoyment as agreed among themselves."). The state does not argue otherwise.

transfer from the department to the district. Finally, even though the district *existed* in February 2013 by virtue of the 2012 order recognizing its formation, it was incapable of conducting business until January 2014, when it filed its articles of incorporation. *See* ORS 198.782. Thus, to the extent that the state argues that the district somehow acquired property interests independently of the order establishing it, we see nothing in the record or the law to support that theory. That is, the state does not argue that a legal entity that, by law, cannot engage in business transactions can nonetheless acquire ownership of property from another entity, even assuming that it could otherwise own property, a matter we need not decide.

As noted, the state does not directly address defendant's legal argument in contending that defendant stole from MRFD. 309 Or App at 40-41. Rather, it contends, as the trial court evidently understood, that the jury could have found as a factual matter that "the informal fire department *became* the district, and that defendant's ownership interest in the property therefore ceased when he ended his involvement with the district." (Emphasis in original.) The state does not explain, however, how the jury's factual findings can determine either the legal status of the department—including whether it had "ceased to exist"—or the capacity of the district to acquire property interests from the department. Thus, even if, as the state argues, defendant somehow relinquished his property rights to the department's equipment and vehicles by declining to continue any involvement with the *district*, that would not support the state's contention that the district acquired—either then or at some earlier, unspecified time—property interests previously vested in defendant, which defendant then stole. As a result, no factual finding by the jury could establish the requisite element that the property allegedly stolen and then possessed by defendant was property of another, namely, the newly formed district.

For similar reasons, the state's argument that the evidence was sufficient for the jury to find that defendant had relinquished any right to the department property by resigning as fire chief is also unavailing. Because, as we have just explained, the department—not the district—owned

the property at the time of defendant's alleged offenses, a factual determination as to defendant's involvement with the district at that time would ultimately be immaterial. Accordingly, the evidence was insufficient to establish every element of aggravated first-degree theft and PSV, and the trial court therefore erred in denying defendant's MJOA as to Counts 3 and 5.

Convictions on Counts 3 and 5 reversed; remanded for resentencing; otherwise affirmed.