Submitted May 26, 2020, reversed November 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT MATTHEW DICKEY,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR19522; A168055

500 P3d 688

Defendant appeals a judgment convicting him of giving false information to a peace officer, ORS 162.385(1)(a). Defendant contends that the trial court erred in denying his motion for a judgment of acquittal, arguing that, to obtain a conviction under ORS 162.385(1)(a), the state must prove, as an element of the offense, that some provision of ORS chapter 153 gave the officer to whom he provided false information actual authority to cite him. He further argues that the officer in this case, who testified that he was acting under the authority of ORS 153.042, lacked actual authority to cite him because he did not personally observe the conduct related to the citation. The state implicitly acknowledges that the officer did not observe the conduct, but contends that the officer did have actual authority because he was working "in tandem" with a fare inspector that observed the conduct and had authority to issue a citation under ORS 153.042. *Held*: The trial court erred. By its plain terms, ORS 153.042(1)'s grant of authority to issue citations is officer specific; it is insufficient that an officer reasonably believes conduct constituting a violation has occurred based on observations of another officer. Thus, the officer in this case did not have authority under a provision of ORS chapter 153, as required for a conviction under ORS 162.385(1)(a).

Reversed.

Andrew M. Lavin, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeHOOG, J.

Reversed.

Mooney, J., dissenting.

## DeHOOG, J.

A jury found defendant guilty of giving false information to a peace officer as defined by ORS 162.385(1)(a). That provision states, in relevant part:

> "A person commits the crime of giving false information to a peace officer in connection with a citation * * * if the person knowingly uses or gives a false or fictitious name, address, or date of birth to any peace officer when:
>
>     "(a)   The peace officer is issuing or serving the person a citation under authority of * * * ORS chapter 153[.]"

Defendant appeals, arguing that, to obtain a conviction under that provision of ORS 162.385, the state must prove, as an element of the offense, that some provision of ORS chapter 153 gave the officer to whom he provided false information *actual* authority to cite him. On appeal, as at trial, defendant argues that no provision of that chapter authorized that officer to issue a citation under the circumstances of this case. He therefore contends that he was entitled to a judgment of acquittal on that charge. For the reasons that follow, we agree and reverse.

In reviewing the denial of a motion for judgment of acquittal (MJOA), we view "the evidence in the light most favorable to the state" to determine whether "a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (internal quotation marks omitted); *State v. Peterson*, 309 Or App 31, 34, 482 P3d 68 (2021). In this case, the relevant facts are few and, for purposes of appeal, undisputed. Defendant was a passenger on a MAX train when a TriMet fare inspector, Coryell, asked him for proof that he had paid the fare, which defendant could not provide. Defendant also did not present proof of his identity at that time. Rather, when Coryell asked defendant for his name, he began to provide one name before "correct[ing] himself" and giving another. That caused Coryell to suspect that defendant had given him a false name, and he contacted Portland Police Officer Helfrich to assist him with establishing defendant's true identity. From another location, Helfrich searched for the name that defendant had given Coryell, but he was unable

to find a match in the police database. Helfrich then met up with Coryell and defendant, who got off the MAX train at the next station, where Helfrich impressed upon defendant the importance of giving accurate information so that a citation could be issued. Helfrich then asked defendant his name.

As with Coryell, defendant gave Helfrich one name before "correct[ing]" himself and giving another, for which again Helfrich could find no record. Ultimately, Helfrich was able to determine defendant's true name using one of a substantial number of identification cards that defendant had in his possession. Using that name, Coryell issued defendant a citation for the TriMet fare violation, as authorized by ORS 153.042.[1] Based upon that sequence of events, the state subsequently charged defendant with giving false information to a peace officer, ORS 162.385(1)(a).

At trial, the state conceded that, as a fare inspector, Coryell was not a "peace officer" for purposes of the false-information statute, and the trial court instructed the jury accordingly. Helfrich testified, however, that he too had authority to issue violation citations under ORS 153.042. In arguing for a judgment of acquittal, defendant did not dispute that, as a general matter, Helfrich was an "enforcement officer" within the meaning of that provision. But here, defendant argued, he was entitled to an acquittal because, despite Helfrich's authority to issue citations for violations taking place in his presence, Helfrich did not have authority to issue the citation in this case. That is, because defendant had committed the fare violation in Coryell's presence, not Helfrich's, ORS 153.042 did not authorize Helfrich to cite defendant for that offense. It followed, defendant reasoned, that, at the time he gave Helfrich a false name, Helfrich was not "issuing or serving [defendant] a citation under authority of *** ORS chapter 153[.]"

---

[1] ORS 153.042(1) authorizes the issuance of a citation for conduct constituting a violation under that chapter and provides, in relevant part:

"[A]n enforcement officer may issue a violation citation only if the conduct alleged to constitute a violation takes place in the presence of the enforcement officer and the enforcement officer has reasonable grounds to believe that the conduct constitutes a violation."

The trial court ultimately denied defendant's MJOA.[2] The court reasoned that Helfrich and Coryell "were working essentially in tandem to issue the same citation[.]" On appeal, the state endorses the trial court's reasoning. Defendant, on the other hand, contends that the trial court's reasoning is inconsistent with the plain text of ORS 162.385 and therefore cannot be what the legislature intended when it enacted that provision. We agree with defendant's reading of ORS 162.385.

"When legal disputes are encompassed in the arguments for and against a motion for judgment of acquittal, we resolve them as we would any other legal question[.]" *State v. Turnidge (S059155)*, 359 Or 364, 455, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017). And because the legal issue at the core of defendant's MJOA requires us to construe ORS 162.385(1)—and, to a lesser degree, ORS 153.042—we follow the familiar *Gaines* methodology of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (evaluating statutory text in context, considering any helpful legislative history, and turning to canons of construction when necessary). Applying those principles, we conclude that the trial court incorrectly construed the applicable statutes and, accordingly, erred in denying defendant's MJOA.

As a starting point for our analysis, we note that the state does not dispute that the phrase "under authority of *** ORS chapter 153" establishes an element that it must make out as part of its case. Nor does the state dispute that, to satisfy that element, it must establish that *someone* had actual authority under chapter 153 to cite defendant for a violation. Finally, the state concedes that the only potential source of actual authority for the citation at issue in defendant's case is ORS 153.042(1), which provides, in relevant part:

"[A]n enforcement officer *may issue* a violation citation *only if* the conduct alleged to constitute a violation takes place

---

[2] Initially, in light of the state's theory that Helfrich was the relevant officer for purposes of ORS 153.042, the trial court allowed the state to reopen its case, at which time Helfrich testified that his authority to issue violation citations came exclusively from ORS 153.042.

in the presence of the enforcement officer and the enforce-
ment officer has reasonable grounds to believe that the con-
duct constitutes a violation."

(Emphases added.) In so conceding, the state implicitly rec-
ognizes that an officer who does not observe conduct consti-
tuting a violation typically may not issue a citation under
that provision.[3] And here, the state acknowledges, Helfrich
did not personally observe defendant engaging in the con-
duct that allegedly constituted a violation.

     The state nonetheless contends that the trial court
did not err in denying defendant's motion for judgment of
acquittal. At trial, the state argued that Helfrich was him-
self issuing the citation at issue and that he was doing so
"under authority of * * * ORS chapter 153." On appeal, how-
ever, the state has shifted its argument slightly. Taking its
cue from the trial court's ruling, the state now argues that
Coryell, the TriMet fare inspector, had actual authority to
cite defendant for a fare violation and that Helfrich was
working "in tandem" with Coryell to issue the citation under
authority that *Coryell* possessed, and not under Helfrich's
own authority. The state therefore reasons that the evidence
was sufficient to convict defendant, because a rational jury
could find that defendant had given false information to a
peace officer—Helfrich—who had requested it "for the pur-
pose of issuing and serving a citation under the statutory
authority possessed by the transit officer," Coryell. That
is, the state no longer contends that Helfrich had author-
ity under ORS 153.042 to cite defendant. Rather, the state
argues that, because Coryell had that authority, and the
jury could find that Helfrich was working with him, the evi-
dence was sufficient to satisfy the "under authority" element
of ORS 162.385(1)(a).

     Before turning to the state's working "in tan-
dem" theory, we first consider whether, as the state effec-
tively concedes, it was required to prove, as an element of

---

[3] We recognize that ORS 153.042(1) refers to conduct that "takes place in
the presence" of an officer; that provision does not specifically require that the
officer "observe" the conduct. For ease of reading, we use the term "observe" in
this opinion, and, because it has no bearing on this case, we leave for another day
whether conduct might take place in an officer's presence even if the officer does
not observe it.

the charged offense, that Helfrich issued or served a citation "under authority of * * * ORS chapter 153[.]" *See* ORS 162.385(1)(a). If the legal authority for the citation (or for Helfrich's issuance of it) is not an element that the state was required to prove as part of its case, then it is immaterial whether Helfrich was issuing a citation "under authority of ORS chapter 153" within the meaning of ORS 162.385(1)(a).

We have not expressly decided that issue. In a different context, we considered whether there was probable cause to arrest a defendant for violating ORS 162.385(1) when he gave a false name to officers who, at the time, were looking for a different person. *State v. Allen*, 222 Or App 71, 191 P3d 762, *rev den*, 345 Or 503 (2008). We explained that,

> "[t]o demonstrate that a defendant violated ORS 162.385, the state must show (1) that 'the person knowingly uses or gives a false or fictitious name, address or date of birth to any peace officer' and (2) that the officer asked for that information for the purpose of 'issuing or serving the person a citation' or 'arresting the person on a warrant.'"[4]

*Id*. at 77. Notably, in listing those elements of giving false information to a peace officer in *Allen*, we omitted any suggestion that, to prove a violation of ORS 162.385(1) in a case involving a citation, the state must also prove that an officer issued or served the citation "under authority of * * * ORS chapter 153[,]" ORS 162.385(1)(a).[5] *Id*. Our focus in *Allen*, however, was on whether the officers that had detained the defendant had been executing a *warrant*; they had not been, and the officers therefore lacked probable cause to make an arrest under the false-information statute. *Id*. As a result, we had no reason to consider whether "under authority * * * of ORS chapter 153" establishes a separate element that the state must prove in a prosecution under ORS 162.385(1)(a),

---

[4] At the time of the *Allen* decision, ORS 162.385(1)(b) (2007) *amended by* Or Laws 2007, ch 771, § 1, made it a crime for a person to give false information to a peace officer for purposes of the officer arresting the person on a warrant. That paragraph has since been amended to require only that there be an outstanding warrant for the person, whether or not the person is actively being arrested at the time. That change does not affect our analysis.

[5] Under ORS 162.385(1)(a), an officer may also be issuing or serving a citation "under authority of ORS 133.055 to 133.076." In this case, however, only an officer's authority under ORS chapter 153 is at issue, so we focus on that chapter.

and our listing of the elements in that case provides little guidance here.

   One might suggest that, because whether something is "under authority" of a certain statute appears to be a question of law, it cannot be an element that the state must prove to the jury as the trier of fact. *See State v. Kenny*, 262 Or App 702, 705-06, 327 P3d 548 (2014) (noting without expressly addressing trial court's rationale that question whether a citation was "issued under ORS 133.055 to 133.076" within the meaning of ORS 133.076 was a matter for the court to decide). But that does not appear to be the case, or at least not inevitably so. In *State v. Litscher*, 207 Or App 565, 142 P3d 549 (2006), we considered whether the defendant was entitled to a judgment of acquittal on a burglary charge, where he had allegedly entered the victim's home with the intent of violating a restraining order. We concluded that, because the violation of a restraining order was not a "crime" within the meaning of the burglary statutes, ORS 164.205 to 164.225, the facts alleged in the indictment and proved at trial were insufficient, as a matter of law, to convict the defendant for burglary. *Id.* at 569; *see also id.* (whether violation of a restraining order constituted a "crime" within meaning of ORS 164.225 was a question of statutory construction). Thus, even though the question whether a restraining order violation constituted a "crime" was a legal issue for the trial court to decide, it was incumbent on the state to prove facts to the jury sufficient to establish, as an element, that the defendant had held the requisite intent when he unlawfully entered or remained in the victim's home. *See id.* at 568-69.

   The same analysis would seem to apply here. Although the question of *when* a citation is deemed to have been issued, served, or otherwise "under authority of * * * ORS chapter 153" is a legal matter for the court to decide, the question of *whether* the circumstances give rise to that authority will almost always turn on predicate findings of historical fact, which are certainly within the province of the jury. As a result, the state's apparent concession that it must prove, as an element of its case, that Helfrich issued a citation "under authority of" ORS chapter 153, appears well taken.

The next question, then, is what exactly the state was required to prove to satisfy the allegation in the complaint—which tracks ORS 162.385(1)(a)—that the officer was issuing and serving defendant a citation "under authority of ORS [chapter] 153." According to defendant, there must be evidence showing that Helfrich—the peace officer to whom defendant gave false information but who did not observe defendant's unlawful conduct—possessed personal and actual authority to issue the citation.[6] As noted, the state does not appear to dispute that ORS 162.385(1)(a) requires proof that *someone* possessed actual authority to cite defendant; the state's argument is that it need not have been Helfrich that had that authority, because he was working with someone who did. We conclude otherwise.

Once again, ORS 162.385(1)(a) applies when a "peace officer is issuing or serving [a] person a citation under authority of * * * ORS chapter 153[.]" As a simple matter of sentence structure, "under authority" may modify either (or both) of two things: (1) the issuance or service of a citation; or (2) the citation itself. Here it does not matter which of those two things the phrase "under authority" is intended to modify, because either conclusion leads to the same outcome. That is, if it applies to the issuance of the citation, defendant would be entitled to an acquittal because, as we explain below, ORS 153.042 did not authorize Helfrich to issue a citation under the circumstances. And if, instead, it applies to the citation itself, defendant would still be entitled to an acquittal because Coryell, and not Helfrich, ultimately issued the citation. In our view, the state's contrary understanding is not supported by the legislative history or the applicable rules of statutory construction.

In seeking to determine the plain meaning— and, therefore, the meaning most likely intended by the legislature—of "under authority," the following dictionary definitions are helpful: "Under" commonly means "required by : in accordance with : bound by," "in conditions or circumstances of," "attested or warranted by <issued [under] the royal seal>," and "subject to the bidding or authority of."

---

[6] Consistent with its position at trial, the state does not contend that Coryell was a "peace officer" for purposes of the false information statute, ORS 162.385(1).

*Webster's Third New Int'l Dictionary* (unabridged ed 2002) at 2487. "Authority" means "justifying grounds : BASIS, WARRANT." *Id.* at 146. Two things are apparent from those dictionary definitions. One is that there is some definitional overlap between the words "under" and "authority," as "under" itself may be understood to mean "subject to the * * * authority of." *Id.* at 2487. The other, more significant observation is that the most logical reading of those two words is that they refer to citations that ORS chapter 153 renders *effective*, and not citations that might, if the facts were different, have been effective. That is, as an examination of ORS 162.385(1)(a)'s plain text demonstrates, it applies to citations that *are* "bound by," "in accordance with," and "in conditions or circumstances of" the provisions of ORS chapter 153, not those that *might*, under *different* circumstances, be permitted by those provisions.

Thus, given the plain language of ORS 162.385(1)(a), unless the state establishes that a citation issued by a peace officer would be effective under ORS 153.042(1), the state cannot satisfy the "under authority" element of ORS 162.385(1)(a). And to conclude, as the state suggests, that ORS 162.385(1)(a) can apply to a citation that Coryell could issue, even if Helfrich could not, would require us to deviate from that plain meaning. Specifically, it would require us to read ORS 162.385(1)(a) to apply when a "peace officer *or another person* is issuing or serving a citation." That understanding would require us to add words to the statutory text that the legislature omitted, something we may not do. *See* ORS 174.010 (in construing statutes, the court's "office" is "not to insert what has been omitted" from the statute). Moreover, even if that were otherwise permissible, nothing about the statutory context or any legislative history of which we are aware supports such a construction.

Because there appears to be no justification for deviating from the plain language of ORS 162.385(1)(a), we turn to whether in fact a citation issued by Helfrich would be effective under ORS 153.042(1). Again, ORS 153.042(1) provides, in relevant part:

"[A]n enforcement officer *may issue* a violation citation *only if* the conduct alleged to constitute a violation takes place

in the presence of the enforcement officer and the enforce-ment officer has reasonable grounds to believe that the con-duct constitutes a violation."

(Emphases added.) By its terms, that provision gives "an" officer authority to issue a violation citation such as the one issued in this case. *Id.* However, it conditions that authority on two things. First, an officer may issue a citation only if the conduct being cited occurs in *that* officer's presence. *See id.* (authorizing issuance of a citation only if conduct occurs in presence of "the" enforcement officer). Second, the officer must have "reasonable grounds to believe that the conduct constitutes a violation." *Id.* Only the first of those two condi-tions is at issue in this case.

Several other things are apparent from the lan-guage of ORS 153.042(1). One is that the action it describes closely parallels the action described in ORS 162.385(1)(a). That is, the officer who may issue a citation under ORS 153.042(1) is, or so it seems, the officer whose issuance of a citation may, under certain circumstances, give rise to a charge of false information to a peace officer under ORS 162.385(1)(a). More specifically, ORS 162.385(1)(a) applies when an officer is issuing a citation under ORS 153.042(1), and, in turn, ORS 153.042(1) permits an officer to issue a citation under specific circumstances. In that sense, the two statutes join together seamlessly to form a whole, with one statute describing permissible conduct by an officer, and the other describing impermissible conduct by a suspect in response.

Another thing evident from that language is that, although it begins with the indefinite article "an," the action that ORS 153.042(1) authorizes is officer specific—it does not purport to allow an officer to issue a citation so long as conduct constituting a violation occurs in the presence of *some* officer; it expressly authorizes the issu-ance of a citation "*only if* the conduct alleged to constitute a violation takes place in the presence of *the* enforcement officer." (Emphases added.) And, to the extent that one is tempted to read the statute to permit—as the trial court's "in tandem" theory would require—one officer to issue a citation based on a second officer's observations, the final

requirement of the statute precludes that understanding. That requirement states that *the* officer must have reasonable grounds to believe that conduct constituting a violation occurred. *Id*. Read together with the immediately preceding language of the statute, it is evident that "the" officer who must have reasonable grounds to believe a violation occurred—so as to authorize the issuance of a citation—must be "the" same officer in whose presence the conduct occurred.

The final thing that is apparent from the statutory text of ORS 153.042(1) is that its inverse also is true. In other words, while an officer who observes a violation taking place may cite a person for that conduct, an officer who does *not* observe a violation may *not* issue a citation. The text explicitly authorizes an officer to issue a citation "only if" the conduct believed to constitute a violation occurs in the presence of the officer issuing the citation; issuing a citation for conduct that has occurred outside the officer's presence, therefore, cannot plausibly be understood to constitute issuing a citation "under authority of *** ORS chapter 153."[7]

Applying ORS 162.385(1)(a) and ORS 153.042(1) as we understand them, we conclude that the trial court erred in denying defendant's MJOA. First, as noted, the state does not dispute that it must establish as an element of its case that defendant was being issued a citation "under authority of *** ORS chapter 153." *See* ORS 162.385(1)(a) (establishing that requirement). As explained above, that concession is well taken. Second, the state similarly concedes that it must establish that at least *some* officer had actual authority under ORS chapter 153 to issue defendant the citation in this case; that concession, too, is well taken, as it is supported by the plain text of ORS 162.385(1)(a) and neither the context nor legislative history of that provision support a different understanding. Third, the state does not contend that Helfrich had actual authority to issue the citation, whether or not Coryell did.

Under those circumstances, the trial court's—and, belatedly, the state's—theory that Helfrich was issuing a

---

[7] As noted, the state does not contend that any other provision of ORS chapter 153 provided authority for the citation at issue in this case.

citation under authority of ORS 153.042 "in tandem" with Coryell cannot support defendant's conviction. Accepting that Coryell had authority under ORS 153.042(1) to cite defendant, the relevant question under ORS 162.385(1)(a) is whether *Helfrich* was a "peace officer * * * issuing" a "citation under authority of * * * ORS chapter 153." He was not. To conclude that Helfrich was himself issuing the citation simply because he was helping Coryell—whom ORS 153.042(1) authorized to issue the citation—would permit an officer to do what ORS 153.042(1) prohibits: to issue a citation based upon another officer's observation of unlawful conduct. *See* 315 Or App at 511-12 (by its plain terms, ORS 153.042(1)'s grant of authority to issue citations is officer specific; it is insufficient that an officer reasonably believes conduct constituting a violation has occurred based on observations of another officer).

Ultimately, whether Helfrich was working with Coryell or working alone, he did not observe conduct constituting a violation; it necessarily follows that ORS 153.042(1) did not authorize him to issue a citation to defendant, and further that he was therefore not "issuing or serving [defendant] a citation under authority of * * * ORS chapter 153" within the meaning of ORS 162.385(1)(a). The trial court erred in concluding otherwise.

Reversed.

**MOONEY, J.,** dissenting.

Defendant violated TriMet Code (TMC) 29.15 when he failed to carry proof of payment while riding the MAX Light Rail. That was not a crime. It was not even a traffic infraction. When the fare inspector, Coryell, asked defendant for his name, defendant gave the inspector a false name. That was also not a crime. But it was another violation of the TMC and it did make it difficult for Coryell to issue defendant an accurate citation. Coryell's next step was to contact the Portland Police Bureau (PPB) transit division for assistance in correctly identifying defendant. TriMet and the PPB had an ongoing contractual arrangement under which PPB's transit division regularly assisted TriMet with code enforcement issues. PPB's Officer Helfrich

responded and, according to his testimony, advised defendant that, "[f]or the purposes of citation, I need your true name and date of birth. If you lie about either one of those, you can be arrested for the crime of furnishing false info to the police for the purposes of citation." Defendant then provided Helfrich with a false name. The majority concludes that, given the wording of the statutes in question, that was not a crime. But, given our standard of review,[1] I cannot see my way clear to agree. In the end, the majority offered one plausible—and even persuasive—interpretation of the key statutory provisions. But it is not the only reasonable interpretation. This may be one of those occasions when the legislature will—and perhaps should—step in and clarify its intent.

The majority accurately recites the relevant facts. I would add that Helfrich responded to assist Coryell pursuant to an existing contract between the two governmental agencies specifically for the purpose of TMC enforcement. That contractual relationship and the manner in which the TMC is routinely enforced are facts that were before the trial court when it concluded that Coryell and Helfrich were working "in tandem."[2] Certainly, one reasonable inference to draw from the intentional and collaborative law enforcement efforts that occurred here is that the officers issued the citation together. Indeed, the citation would not likely have issued—at least not in defendant's correct name—without the joint efforts of the inspector and the officer.

The majority adheres to this court's preference for using *Webster's Third New International Dictionary* (unabridged ed 2002) to determine "the plain meaning" of

---

[1] We review the denial of a motion for a judgment of acquittal to determine whether the facts—viewed in the light most favorable to the state—support a finding of guilt beyond a reasonable doubt. *State v. Derry*, 200 Or App 587, 589, 116 P3d 248 (2005), *rev den*, 340 Or 34 (2006).

[2] At the close of the state's evidence, defendant moved for a judgment of acquittal on the basis that the state failed to produce evidence that Helfrich had the authority to issue the citation. The court denied the motion, observing that Helfrich and Coryell were "essentially working in tandem" for the purposes of issuing the TriMet citation. The court concluded that, based on the evidence, a rational juror could infer that defendant provided false information to Helfrich when Helfrich was "issuing" defendant a citation "under the authority of *** ORS chapter 153."

the key statutory language.[3] *See* Jack L. Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 653-54 (2019) (noting preference for that dictionary). I would not restrict my search for the "plain meaning" of words to one dictionary—especially those words selected and passed into law by Oregon's citizen legislature. We are more likely to identify the "ordinary" usage of words by consulting more than one dictionary and doing so also "avoids the possibility that dictionary selection affects [our conclusion]." *Id.* at 655. I would, thus, turn to the *Oxford Advance Learner's Dictionary*. I would select that online dictionary intended for those teaching and learning American English because it seems likely that it will provide insight into the basic and ordinary usage of the words in question. To "issue" is to "make something known formally" or to "give something to somebody, especially officially." *Oxford Advanced Learner's Dictionary*, https://www.oxfordlearnersdictionaries.com/us/definition/english/issue_2 (last visited July 7, 2021). The word "under" is "used to say who or what controls, governs or manages somebody/something." *Oxford Advanced Learner's Dictionary*, https://www.oxfordlearnersdictionaries.com/us/definition/english/under_1?q=under (last visited July 7, 2021). And, "authority" means "power," "authority to do something," or "the power or right to do something." *Oxford Advanced Learner's Dictionary*, https://www.oxfordlearnersdictionaries.com/us/definition/english/authority?q=authority (last visited July 7, 2021).

In light of the recent addition of the phrase "in connection with" to the text of subsection (1) of ORS 162.385, which modifies the words "a citation or warrant" in the context of paragraphs (a) and (b) of that subsection, I note also that the word "connection" is defined to mean "3a : relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement) <the

---

[3] The textual dispute focuses on the language of ORS 162.385(1)(a):

"A person *commits the crime of giving false information* to a peace officer *in connection with a citation* or warrant if the person knowingly uses or gives a false or fictitious name, address or date of birth to any peace officer *when*:

"(a) The peace officer is issuing or serving the person a citation under authority of ORS 133.055 to 133.076 or ORS chapter 153[.]"

(Emphases added.)

[connection] of intelligence and success> b : CONTEXT, REFER-
ENCE, OCCASION <in this [connection] the word has a differ-
ent meaning>[.]" *Webster's* at 581. The phrase "in connection
with" is defined by *Lexico*, https://www.lexico.com/definition/
in_connection_with (last visited July 7, 2021), an online
Oxford dictionary of phrases, to mean "with reference to;
concerning."

Considering those definitions in isolation and then
considering them together in the context of ORS 162.385(1)(a)
as written, I think a reasonable reading of ORS 162.385(1)(a)
is:

> "(1)   A person commits the crime of giving false infor-
> mation to a peace officer *concerning* a citation * * * if the
> person knowingly uses or gives a false or fictitious name,
> address or date of birth to any peace officer when:

> "(a)   The peace officer *officially makes known to or gives*
> the person a citation *governed by or based upon * * * ORS
> chapter 153.*"

(Emphases added.) Under that reading of the statute, the
trial court did not err in denying defendant's motion for
judgment of acquittal—even if one is not persuaded that
Coryell and Helfrich were working together to issue that
citation—because defendant gave Helfrich a false name
concerning an ORS chapter 153 (*i.e.*, nontraffic) citation for
which Helfrich was gathering information and that Helfrich
officially made known to defendant at that time.

This case demonstrates the ambiguity of the perti-
nent statutory language and calls out for clarification. This
is why: This case began with an almost trivial violation—
one that may well have been more about economic hardship
than anything else. But, for whatever reason, defendant
escalated the situation when he lied to the enforcement
officer, setting into motion a series of additional steps that
required additional resources. Ultimately, when defendant
was told that he was speaking with a police officer concern-
ing a citation for the TMC violation and that it would be a
crime for him to give a false name to the officer, defendant
chose to give him a false name anyway. Surely, ORS 162.385
was intended to apply to that set of facts.

I note, finally, the importance of the most recent legislative amendments to ORS 162.385. In 2003, House Bill 2725 expanded the scope of ORS 162.385 to include providing false information to a police officer "who is attempting to serve an arrest warrant." In 2017, House Bill 2987 amended ORS 162.385 by eliminating the specific purpose requirement and replacing it with the more general phrase "in connection with a citation or warrant." It also extended criminal liability to persons who provide false information to officers in connection with outstanding warrants regardless of the officer's intent with respect to the warrant at that time. I doubt that the legislature intended for the statute to be read so narrowly that the criminality of providing false information to a police officer turns on what *the officer* observed, intended, or did, rather than on defendant's conduct and associated state of mind. But we are left with the language the legislature selected. I would nevertheless affirm the trial court to reach the result that, it seems to me, aligns most closely with the legislature's objective.

With due regard for my colleagues in the majority, I dissent.