Argued and submitted April 29, affirmed December 7, 2022, petition for review denied May 4, 2023 (371 Or 60)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PERRY ANANTH KANURY BORDEAUX,
aka Perry Ananth Kanury,
*Defendant-Appellant.*

Lincoln County Circuit Court
18CR52778; A172965

522 P3d 900

Defendant appeals from a judgment of conviction for unlawfully taking food fish from a marine reserve, ORS 509.006. In his first and second assignments of error, defendant argues that the trial court plainly erred in failing to *sua sponte* grant a demurrer or a motion in arrest of judgment. Next, defendant assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that the state failed to present sufficient evidence that he had "fished" in the marine reserve under ORS 509.006. Additionally, defendant argues that in convicting him of a misdemeanor, the court erred in applying a criminal negligence culpable mental state. Finally, in his fifth assignment of error, defendant argues that the trial court erred in precluding a witness from offering an expert opinion on whether the topography of the marine reserve could have affected the movement of defendant's crab pots. *Held*: First, the Court of Appeals rejected defendant's first two assignments of error because any error was not plain. Second, the court affirmed the trial court's denial of the motion for judgment of acquittal and concluded that defendant failed to preserve the culpable mental state issue. Lastly, with respect to defendant's fifth assignment of error, the court concluded that any evidentiary error was harmless.

Affirmed.

Thomas O. Branford, Judge.

Francis C. Gieringer argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Colm Moore argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unlawfully taking food fish from a marine reserve, ORS 509.006. On appeal, in his first and second assignments of error, defendant argues that the trial court plainly erred in failing to *sua sponte* grant a demurrer or a motion in arrest of judgment. We conclude that any error was not plain and thus, we reject those claims of error without further discussion. Next, defendant assigns error to the trial court's denial of his motion for judgment of acquittal (MJOA), arguing that he was entitled to an MJOA because the state failed to present sufficient evidence that he had "fished" in the marine reserve under the correct construction of the statute. Additionally, defendant argues that in convicting him of a misdemeanor, the court should have applied a "knowing" mental state, but failed to do so. We reject defendant's construction of the term "fish for" in the statute and conclude that defendant failed to preserve the culpable mental state issue that he raises on appeal. Finally, in his fifth assignment of error, defendant argues that the trial court erred in precluding a witness from offering an expert opinion on whether the topography of the Otter Rock Marine Reserve could have affected the movement of defendant's crab pots. We conclude that any error was harmless. Therefore, we affirm.

## BACKGROUND

In June 2018, on two separate occasions, a person who lives in Otter Rock saw defendant's commercial fishing vessel in the marine reserve area, although the person did not observe anyone on the vessel deploy or pull any kind of fishing gear from the reserve. The person called the Marine Science Center to alert the center to his observations.

In early July, Oregon State Police (OSP) troopers located a north-to-south line of nine crab pots belonging to defendant, three of which were inside the marine reserve. Specifically, those three pots were located within 18 yards, 75 yards, and 165 yards of the reserve's boundary. An OSP trooper pulled the two pots that were farthest into the reserve and found that they contained bait and crabs. The trooper did not see signs of cannibalism, which indicated

that the crabs had not been in the pot longer than 14 days. She subsequently looked up the "vessel monitoring system" (VMS) data of defendant's vessel. VMS records a vessel's location every half hour and defendant's vessel's data indicated that it was "in the area" of the reserve on May 17, June 8, and June 29.

The state subsequently charged defendant with unlawful commercial fishing, a Class A misdemeanor, alleging that defendant "unlawfully and with criminal negligence commercially fished inside the Otter Rock Marine Reserve in violation of ORS 509.006 and the 2018 Oregon Commercial Fishing Regulations." ORS 509.006 provides that "[i]t is unlawful to take, possess, buy, sell or otherwise handle any food fish in or from any waters of this state, during times, in a manner or by means of the fishing gear prohibited by law."[1] As particularly relevant here, "'take' means fish for, hunt, pursue, catch, capture or kill or attempt to fish for, hunt, pursue, catch, capture or kill." ORS 506.006(12). And with limited exceptions not applicable here, the Oregon commercial fishing regulations prohibit any taking, "including fishing or hunting, of any fish or wildlife species" at all times within the Otter Rock Marine Reserve. OAR 635-012-0050(1). ORS 506.991(1) further provides that "violation of any provision of the commercial fishing laws * * * is a Class A misdemeanor if the offense is committed with a culpable mental state."

During a bench trial, at the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state needed to prove that defendant actually "pulled" crab from the pots but had failed to do so. The trial court denied his MJOA. It reasoned that the definition of the word "take" in ORS 506.006 included "attempt[ing] to fish" and thus the state did not need to adduce evidence that defendant actually "pulled" any crab from the marine reserve.

After the court denied his MJOA, defendant presented evidence to support his theory that he had set his

---

[1] "Food fish" includes crabs. *See* ORS 509.001 (applying definitions of ORS 506.011 to chapter 509); ORS 506.011(5) (defining "food fish" as any animal over which the State Fish and Wildlife Commission (SFWC) has jurisdiction pursuant to ORS 506.036); ORS 506.036(1) (establishing jurisdiction of SFWC over "shellfish"); ORS 506.011(7) ("shellfish" includes crab).

crab pots outside of the reserve and some natural forces had then moved the pots into the restricted area. Specifically, defendant testified that he had set his crab pots north of the marine reserve. He stated that had he known his pot was inside the reserve, he would have contacted the OSP to find out how to proceed. Leonard Vancurler, a long-time commercial fisherman, who was also the owner of defendant's vessel, testified that strong wind from the north during summertime, swells, and other factors can move crab pots south into the reserve zone.

The state introduced evidence showing that it was unlikely that natural forces moved defendant's pots into the reserve, which the court found more credible than defendant's testimony. There had been no major weather systems in June or July that were capable of moving the pots significantly along the ocean floor. A state trooper stated that the furthest he had seen crab pots blown into the reserve by wind or ocean currents was by 50 feet and "it does not happen often." Another trooper testified that when the troopers first found defendant's pots, they were "spaced pretty uniformly apart." She noted that nothing indicated that those pots had been blown into the reserve because even if there had been weather capable of moving the heavy crab pots, it was unlikely that all of the pots on a line would move north to south in a uniform manner. The witness who observed defendant's vessel in the reserve took pictures, showing that defendant's wife was on the vessel while it was in the reserve, holding a bait jar in her hand. Defendant's wife testified that she was filling bait jars for later use.

During closing argument, defendant argued that without evidence that defendant "pull[ed] fish from the pots," the only viable theory of the state's case would be that defendant violated the law "by intentionally attempting to take food fish from the marine reserve by placing pots within those, the reserve." Defendant outlined the state's evidence, urging the court to find that defendant did not "intentionally attempt[] to remove food fish or crab from the marine reserve by placing his pots within the reserve." The state argued that "simply deploying gear into the Otter Rock Marine Reserve [] is illegal" and that the state had

proved beyond a reasonable doubt that defendant did that with criminal negligence, in violation of ORS 509.006.

The trial court found defendant guilty of fishing in the reserve. It explained that unlike the meaning of "attempt" for purposes of inchoate crimes, *see* ORS 161.405(1), "attempt," as used in "attempt to fish for" in ORS 509.006, has its ordinary meaning—it means engaging in the process of fishing. Consequently, the court held, the legislature's use of "attempt" in the statute should not be read to require an intentional mental state. The court then concluded that the evidence showed that regardless of how the pots ended up in the reserve, defendant had fished for crab with at least criminal negligence—the culpable mental state alleged in the charging instrument—by failing to remove his pots from the reserve even though he knew they were in the reserve. That is, the court found that, regardless of whether defendant intentionally placed the pots in the reserve, he came to realize that they were in the reserve and chose to leave them there. The court entered a judgment of conviction, and defendant now appeals.[2]

## MOTION FOR JUDGMENT OF ACQUITTAL

On appeal, defendant first challenges the trial court's denial of his motion for judgment of acquittal. As he did below, he argues that the state failed to present sufficient evidence that he had unlawfully fished in a marine reserve, as prohibited by ORS 509.006.[3]

We review the denial of a motion for judgment of acquittal to "determine whether, after viewing the facts and all reasonable inferences in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Colpo*, 305 Or App 690, 691, 472 P3d 277, *rev den*, 367 Or 290 (2020). In addition, when arguments for and against a

---

[2] The trial court originally entered a judgment of conviction under ORS 498.002 (without mention of ORS 509.006). After oral arguments on appeal, the parties filed a joint motion to correct the judgment and the trial court entered an amended judgment convicting defendant of violating ORS 509.006.

[3] The state argues that defendant failed to preserve his arguments on the legal sufficiency of the state's evidence. Upon reviewing the record, we conclude that defendant adequately preserved the error for appellate review.

MJOA involve disagreement over the proper construction of the applicable statutes, we resolve them as a matter of law. *See State v. Dickey*, 315 Or App 501, 505, 500 P3d 688 (2021). Here, we conclude that the trial court correctly denied defendant's MJOA on the sufficiency of evidence that defendant "fished" as contemplated by ORS 509.006.

On appeal, in challenging the sufficiency of the state's evidence, defendant asserts that it was insufficient for the state to show that he *attempted* to catch crab because the statutory definition of the term "fish for" requires the state to prove that defendant actually "landed" crab from the marine reserve. "Land," as a term of art used in the commercial fishing laws, means "to begin transfer of food fish from a vessel." OAR 635-005-0240(22)(a). Thus, according to defendant, the state was required—and failed—to prove that defendant actually caught crab and began transferring that crab from the vessel.

The legal issue at the core of defendant's MJOA requires us to construe the meaning of "fish for" as defined in ORS 506.006(12). Our goal is to ascertain the enacting legislature's intent by examining the disputed provision's text and context, as well as any helpful legislative history of which we are aware. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Text and context "must be given primary weight in the analysis," as "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature." *Id.* at 171.

As noted above, the state charged defendant with unlawfully fishing in the Otter Rock Marine Reserve. Fishing is one manner of taking. To "take," in turn, is defined by ORS 506.006(12) as to "fish for, hunt, pursue, catch, capture or kill or attempt to fish for, hunt, pursue, catch, capture or kill." Defendant argues that because the state charged defendant with "fishing," it could not rely on the part of the definition of "take" that includes "attempted to fish for." The state does not argue to the contrary. But even assuming that defendant is correct that the state could not rely on the term "attempt to fish for," we nonetheless conclude that to "fish for," as used in ORS 506.006(12), does not require the person to catch food fish.

Because the verb "fish" is not a defined term in the commercial fishing laws, we first consider the term's "plain, natural, and ordinary" meaning. *State v. McNally*, 361 Or 314, 321, 392 P3d 721 (2017) (internal quotation marks omitted). Defendant acknowledges that under its ordinary definition, "fish" means "1 a (1) : to attempt to catch fish by any means or for any purpose." *Webster's Third New Int'l Dictionary* 858 (unabridged ed 2002). Under that definition, fishing occurs when a person engages in the process of trying to catch fish. That they are ultimately unsuccessful in those efforts of catching fish does not render the person not "fishing." *See State v. Stockert*, 303 Or App 314, 321, 464 P3d 151, *rev den*, 367 Or 76 (2020) (explaining that a person is "hunting" when they are engaged in the hunt and the fact that "they are ultimately unsuccessful in those efforts does not render them not 'hunting'").

We acknowledge that to construe "fish for" as including engaging in the act of fishing, regardless of whether the person actually catches fish, could render the "attempt to fish for" part of the statute somewhat redundant. We nonetheless are unpersuaded that "fish for" in the statute has a different meaning than the ordinary one because of that risk of redundancy. The Supreme Court has observed that "the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal. Redundancy in communication is a fact of life and of law." *State v. Cloutier*, 351 Or 68, 97, 261 P3d 1234 (2011); *see also Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 397, 737 P2d 595 (1987) (noting that legal terminology often employs synonyms, "sometimes for clarity, sometimes for emphasis"). Indeed, in addition to "fish for" and "attempt to fish for," the legislature included other redundancies, such as the terms "catch" and "capture" in the definition of "take." It is apparent from the text and context of the statute that the legislature intended to cast a wide net to avoid any inadvertent omission when defining "take" in the commercial fishing laws.

In arguing to the contrary, defendant contends that rather than relying on the ordinary definition of "fish[,]" we should interpret "fish" to require actually "landing" crab because that is what the statutory definition of the term

"angling" requires. Under ORS 506.006(1), "angling" means "fishing for personal use with one line attached to a pole held in hand *while landing the fish*, or with a hand-operated line without rod or reel \*\*\*." (Emphasis added.) "For fisheries where food fish were taken by use of a vessel, 'land, landed or landing' means to begin transfer of food fish from a vessel. Once transfer begins, all food fish on board the vessel are counted as part of that landing[.]" OAR 635-005-0240(22)(a). According to defendant, because angling is an act ordinarily associated with a specific type of fishing, and angling associates the act of fishing with landing a fish, the definition of "fish for" in ORS 506.006(12) requires "the landing of food fish" by catching and initiating transfer of fish from a fishing vessel.

We disagree. Defendant's proposed interpretation fails because under ORS 506.006(1), "angling" is defined as "fishing for personal use" only. *See also* ORS 509.025 ("It is unlawful to sell within this state, or transport out of this state for the purpose of sale, food fish taken from any waters of this state by means of angling."). Here, it is undisputed that defendant is a commercial fisherman and that he set the crab pots for commercial purposes. Additionally, the use of the word "or" as a coordinating conjunction in ORS 506.006(1) signals that holding a pole in hand while landing is only one method of angling; another way of angling is fishing "with a hand-operated line without rod or reel." It is thus not apparent from the text that even angling necessarily requires the act of landing a fish.

In sum, the text and context of ORS 506.006 make clear that the term "fish for" includes engaging in the act of fishing, regardless of whether the person actually catches or transfers any fish from a vessel. Thus framed, the evidence that defendant left his baited crab pots in the marine reserve without retrieving them and that the OSP troopers actually found crabs trapped in defendant's pots when they located them, viewed in the light most favorable to the state, would allow a rational factfinder to find that defendant "fished for" crab in the reserve as that term is used in ORS 509.006. We therefore conclude that the trial court did not err in denying defendant's MJOA based on the sufficiency of the evidence.

## THE REQUISITE CULPABLE MENTAL STATE

We understand defendant's fourth assignment of error to be that the court erred in rejecting his argument that it had to apply a culpable mental state of "intentionally" to find him guilty and, further, erred in subsequently applying the charged mental state of criminal negligence.[4] On appeal, defendant argues that, under ORS 509.006, "taking" food fish is "a conduct element, which, at minimum, requires a knowing mental state." The state responds that defendant's claim of error is not preserved. We agree.

During closing argument, defendant argued that without evidence that defendant "pull[ed] fish from the pots," the only viable theory of the state's case was that defendant violated the law "by intentionally attempting to take food fish from the marine reserve by placing pots within *** the reserve." In defendant's view, the requirement for a culpable mental state of "intentionally" arose from the fact that the state had not proved that he had actually pulled crab from his pots in the reserve; thus, in his view, the state's theory could be only that he had attempted to take crab. In support of that view, he cited a case involving inchoate attempt crimes under ORS 161.405(1) and, based on that case, argued that "it defies logic for a person to accidentally attempt to do something." Defendant then outlined his view of the state's evidence, urging the court to find that defendant did not "intentionally attempt[] to remove food fish or crab from the marine reserve by placing his pots within the reserve."

The trial court rejected that argument. The court agreed with defendant that an inchoate crime of attempt requires an intentional mental state under ORS 161.405.

---

[4] Defendant's assignment of error states that the trial court "erred when it entered a conviction" for unlawful taking. That assignment of error does not identify a "legal, procedural, factual, or other ruling" by the trial court. ORAP 5.45(3). In the context of defendant's argument in support of his claim of error, we understand defendant to be challenging the trial court's application of the culpable mental state, which is akin to challenging the trial court's self-instruction. *See State v. Colby*, 295 Or App 246, 252, 433 P3d 447 (2018) ("[I]t is not uncommon for a court to receive proposed instructions from the parties during the course of a bench trial and to instruct itself on the correct version of the law, thereby creating a record that allows us to review whether the court applied the correct principles of law in reaching its verdict.").

Under that statute, an attempt to commit a crime occurs when a person "intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405.

But as the court correctly observed, the word "attempt [in a statute] doesn't always mean what's defined in [ORS] 161.405." Here, the court noted, ORS 509.006 defines the criminal conduct itself to include attempted acts: To "take," for purposes of ORS 509.006, is defined to include "attempt to fish." ORS 506.006(12) ("'[T]ake' means fish for, hunt, pursue, catch, capture or kill or attempt to fish for, hunt, pursue, catch, capture or kill."). Unlike an inchoate attempt crime under ORS 161.405, which requires the culpable mental state of "intentionally," a crime whose prohibited conduct is defined in terms of an attempt to do something does not necessarily require the culpable mental state of intentionally. *See, e.g.*, *State v. Rapp*, 306 Or App 265, 274-75, 473 P3d 1126, *rev den*, 367 Or 291 (2020) (distinguishing between a charge of an attempt to commit an act that, if completed, would be a statutorily defined crime and that would require proof that the defendant undertook that attempt intentionally, *i.e.*, an inchoate crime under ORS 161.405, and statutes that define a crime in terms of an attempted act and that do not necessarily require an intentional mental state); *Stockert*, 303 Or App at 318-19 (where "hunt" is defined by ORS 496.004(10) as "to take or attempt to take any wildlife," attempt has its "ordinary sense to capture what it means to engage in the process of hunting, rather than in its legal sense of defining [an] inchoate crime").

Thus, the court concluded, even if the state's evidence proved only that defendant had attempted to fish, defendant was incorrect that the culpable mental state of "intentionally" applied, because the term "take" in the statute encompasses attempts to fish in their ordinary, non-inchoate-crime sense of engaging in the process of fishing.

Defendant did not raise any further argument about the applicable culpable mental state. As explained above, the court held that defendant had not just attempted to fish, but had actually fished (by leaving his baited pots in the reserve) and, thus, had "take[n]" crab for purposes of

ORS 509.006. *See* ORS 506.006(12) ("'Take' means fish for \*\*\*."). It found that defendant had done so with the charged culpable mental state of criminal negligence, and, accordingly, it found defendant guilty.

On appeal, defendant raises a new argument about culpable mental states. He now argues that, under the general methodology for determining applicable culpable mental states, *see, e.g.*, *State v. Owen*, 369 Or 288, 295-98, 505 P3d 953 (2022), to convict a defendant under ORS 509.006, the state must prove that the defendant took food fish at least "knowingly." Thus, in his view on appeal, although the court was not incorrect in rejecting his argument that the state had to prove that he acted intentionally, it nevertheless erred in relying on the charged culpable mental state of criminal negligence.

"We evaluate whether an issue is adequately preserved in light of the underlying purposes of the preservation rule—'to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record.'" *State v. Gray*, 286 Or App 799, 806, 401 P3d 1241 (2017), *rev den*, 362 Or 482 (2018) (quoting *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015)); *see also Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (the touchstone of the preservation requirement is procedural fairness to the parties and trial court).

The Supreme Court has also distinguished "between 'raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*.' *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (emphasis in original)." *State v. McKinney/Schiffer*, 369 Or 325, 332, 505 P3d 946 (2022). "Raising an issue at trial 'ordinarily is essential,' whereas identifying a source is less so, and making a particular argument is the least significant." *Id.* (quoting *Hitz*, 307 Or at 188).

In this case, we conclude that defendant's argument below did not preserve his contention on appeal. As explained above, defendant argued—in this bench trial context, he effectively proposed an instruction—that a culpable

mental state of "intentionally" was required because his actions, if proven, would have been an inchoate crime. The court rejected his understanding of the relevant law and, consequently, his proposed instruction. It then instructed itself differently, relying on the charged mental state of criminal negligence. Defendant did not object to the criminal negligence "instruction" that the court gave itself; he did not raise any further argument that, even if the court was correct that "intentionally" was not the correct culpable mental state because the crime was not an inchoate one, some culpable mental state other than criminal negligence applied. *Cf. State v. Simonov*, 358 Or 531, 549, 368 P3d 11 (2016) ("'Under Oregon law, there are two different types of error respecting jury instructions: (1) error in the failure to give a proposed jury instruction, and (2) error in the jury instructions that were actually given.'" (Quoting *Williams v. Philip Morris Inc.*, 344 Or 45, 55, 176 P3d 1255 (2008)); *id.* (where the defendant had both objected to the instruction that was given, which contained an incorrect culpable mental state, and proposed his own instructions, which contained the correct culpable mental state, holding that the trial court had erred in two different respects).

Unless we consider the "issue" that defendant raised before the trial court to be the issue of culpable mental states in general—a proposition that recent Supreme Court cases appear to reject, *see McKinney/Schiffer*, 369 Or at 333-34 (treating defendants' arguments as appropriate for plain error review where the defendants had challenged the trial courts' instructions on culpable mental states based on the general culpable mental state analysis but had not identified the correct culpable mental states in their proposed instructions)—defendant's argument on appeal presents a distinctly different "issue" from the one that defendant raised before the trial court. Further, the purposes of preservation have not been served; in particular, the trial court lacked the opportunity to consider any parts of defendant's new argument on appeal and correct any error. *Gray*, 286 Or App at 806.

Because defendant did not raise the issue before the trial court and, consequently, the purposes of preservation

were not served, we conclude that defendant's argument on appeal is not preserved.[5]

## CHALLENGE TO TRIAL COURT'S RULING ON
## EXPERT TESTIMONY

After the court denied his motion for judgment of acquittal, defendant called Vancurler, a long-time commercial fisherman, to testify about how the topography of the marine reserve could easily move crab pots. In defendant's view, that evidence would have supported his theory that he set his crab pots outside of the marine reserve and that natural forces then moved them into the reserve. The trial court allowed Vancurler to testify about commercial fishing and the general effect of wind, swells, and other factors on the movement of crab pots in the ocean but ruled that he could not testify about his assessment of the movement of defendant's crab pots based on Otter Rock's topography. The trial court explained that because Vancurler had never fished in that particular area, he did not "know the topography of the ocean bottoms and what might facilitate or impair the movement of pots, apart from the current and the wind."

On appeal, defendant assigns error to the trial court's partial exclusion of Vancurler's testimony. He argues that Vancurler's substantial experience as a commercial fisherman and his ability to read the navigational charts to assess a particular area's topography were sufficient to qualify him to offer an opinion on how Otter Rock's topography would affect the movement of defendant's crab pots.

We conclude that even if the court erred in excluding Vancurler's testimony about the movement of defendant's crab pots, the error was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (evidentiary errors do not warrant reversal if there is "little likelihood that the particular error affected the verdict").

---

[5] In defendant's reply brief, he asks, for the first time, that, if we conclude that his argument is not preserved, we consider it as plain error. We generally do not consider arguments raised for the first time in a reply brief. *State v. Murga*, 291 Or App 462, 468, 422 P3d 417 (2018). In any event, we would not reverse as plain error, particularly because the evidence likely would have developed differently had defendant raised the issue below and because it is unlikely that application of a "knowing" mental state would have affected the outcome even on this record.

In rendering the verdict, the trial court concluded that defendant fished for crab in violation of ORS 509.006 by knowingly leaving the pots in the reserve without retrieving them. Even if Vancurler's testimony would have shown that defendant's crab pots were only in the reserve because natural forces had moved them, that evidence was insignificant, given the trial court's reasoning about how defendant had violated ORS 509.006. As explained, the trial court found defendant guilty of unlawful fishing in the marine reserve because after he knew his pots were in the reserve, he took no action to remove them; given that line of reasoning, *how* the pots ended up in the reserve was thus immaterial to the court's decision. Therefore, it is unlikely that any error in excluding Vancurler's testimony on the movement of defendant's crab pots affected the trial court's verdict.

Affirmed.