624 January 28, 2026 No. 33

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. R. B., aka A.B.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

A. R. B.,
aka A.B.,
*Appellant.*

Yamhill County Circuit Court
18JU04897; A182902

Cynthia Kaufman Noble, Judge.

Argued and submitted June 9, 2025.

Ginger Fitch argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Vacated and remanded.

## AOYAGI, P. J.

In this delinquency case, youth appeals a juvenile court order requiring him to report as a sex offender.[1] Youth's claim of error turns on the legal standard for such an order. Under ORS 163A.030, when a youth has been adjudicated for conduct that would constitute a felony sex crime if committed by an adult, the juvenile court is to hold a hearing on the issue of sex-offender reporting in the six months before the termination of juvenile court jurisdiction. It is the youth's burden to prove at that hearing, by clear and convincing evidence, that the youth "is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). If the youth fails to do so, the court is required to order the youth to report as a sex offender. *Id*. In this case, after hearing the evidence, the juvenile court found that youth does not pose a "threat to the public" but is not "fully rehabilitated" and ordered youth to report as a sex offender. Youth argues that, in doing so, the court misconstrued ORS 163A.030(7)(b) as containing two separate requirements, instead of one unified standard. As explained below, we agree with youth on the statutory construction issue, and we vacate and remand for further proceedings.

### FACTS

In 2018, youth was adjudicated for conduct that, if committed by an adult, would constitute attempted first-degree sodomy and attempted first-degree sexual abuse. The offenses stemmed from incidents in which youth, aged 12 to 16 at the time, sexually offended against one of his younger brothers. Youth was committed to the legal custody of the Oregon Youth Authority (OYA) for a period not to exceed five years.

In 2023, in anticipation of the termination of juvenile court jurisdiction, the juvenile court held a hearing on the issue of sex-offender reporting, as required by ORS 163A.030(1)(b)(A). Each party called one witness. Youth called a clinical psychologist who had met with youth and

---

[1] It is our frequent practice in delinquency matters to refer to individuals under juvenile court jurisdiction as "youth" regardless of their age at the time of a particular proceeding. In this case, youth was 21 years old at the time of the hearing at issue on appeal. We nonetheless call him "youth."

prepared a sexual evaluation report, and who recommended against sex-offender reporting. The state called youth's OYA parole officer, who testified to youth's treatment history and some positive and negative aspects of youth's conduct while in OYA custody. In closing argument, youth argued that he met his burden under ORS 163A.030(7)(b). The state did not take a position on whether youth should report. However, whereas youth had focused his arguments on public safety as the touchstone of the legal standard in ORS 163A.030(7)(b), the state argued for two distinct requirements—"one, he's been rehabilitated and, two, does not pose a threat to the safety of the public."

The juvenile court adopted the state's reading of the statute, describing ORS 163A.030(7)(b) as creating a "two-prong test." The court acknowledged that it could be wrong on that point but proceeded with that understanding. Based on the evidence, the court was persuaded that youth was not a threat to the public, in that it did not think that youth was "going to go out there and necessarily do dangerous sexual behaviors," but it was not persuaded that youth was "fully rehabilitated." The court explained:

> "[Youth], I don't think that you are a threat to the public, I don't believe you are going to go out there and necessarily do dangerous sexual behaviors, okay? Provided this side, you keep working rehabilitation, I can't find today on the facts in the record that today right now [youth] is fully rehabilitated, but, [youth], I believe that you can be, I believe if this hearing could look at you four years from now or ten years from now, we would find evidence in the record of rehabilitation. Now, today what I see is you're in progress, you're moving, you're working on your rehabilitation, your issues go back to deep very young in your childhood, you've been working on these issues for, what, five, maybe six years, but the issues were present for you, [youth], beyond that, right, they went back further, so it's going to take longer, I think, for you to work through this."

The court then discussed rehabilitation at some length. It described the goal of rehabilitation as being "to go down to the root cause" and referenced youth's history with pornography and lack of impulse control leading him to "dark places." In conclusion, the court stated, "I still stand by I do

not see [youth] as a threat to the public, so I believe we've got one prong down, one prong in the middle of development." Because the court was not persuaded on both prongs, the court ordered youth to report as a sex offender.

Youth appeals, challenging that order. He claims that the juvenile court misconstrued ORS 163A.030(7)(b) as creating two separate requirements, instead of one unified requirement focused on the risk of sexual reoffending, and that it consequently erred in ordering youth to report as a sex offender even though he did not pose a threat to public safety. The state responds that the claim of error is unpreserved, that youth's argument is foreclosed by the juvenile court's written order, and that the juvenile court correctly construed ORS 163A.030(7)(b) in any event.

## PRESERVATION

We first address preservation, which the state contests. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); *see also* ORAP 5.45(1). Preservation rules are "pragmatic as well as prudential," and the "touchstone" is "procedural fairness to the parties and to the trial court." *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008). "We evaluate whether an issue is adequately preserved in light of the underlying purposes of the preservation rule—to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record." *State v. Bordeaux*, 323 Or App 60, 70, 522 P3d 900 (2022), *rev den*, 371 Or 60 (2023) (internal quotation marks omitted).

Here, youth adequately preserved his claim of error. Each party presented to the juvenile court their own view of what youth had to prove under ORS 163A.030(7)(b). The juvenile court understood that the parties had different views on the issue, and it decided which view to adopt. In doing so, it acknowledged that it could be incorrect—which is significant only in that it reflects the court's own recognition that it was choosing between competing views. Even though youth's argument is more developed on appeal, the

juvenile court had "the chance to consider and rule" on the statutory issue and would not be surprised by our addressing it. *Peeples*, 345 Or at 219; *see also State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) ("Sometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" (Emphasis in original.)). The issue is adequately preserved.

## THE WRITTEN ORDER

We next consider—and reject—the state's argument that the juvenile court's written order on sex-offender reporting forecloses youth's argument because it contains a finding against youth as to *both* rehabilitation and public safety.

The juvenile court used a form order that offered two options. The first option was to find that, "[b]y clear and convincing evidence, the youth is rehabilitated and does not pose a threat to the safety of the public." The second option was to find that "[t]he youth has not proven, by clear and convincing evidence, that he or she is rehabilitated and does not pose a safety threat to the public." The court checked the box for the second option. In doing so, the court necessarily relied on its understanding of the statutory standard as a two-prong test, in which the first prong requires a finding that the youth "is rehabilitated" (X) and the second prong requires a finding that the youth "does not pose a safety threat to the public" (Y). Given the court's reading of the statute, logic dictates that the court would check the first box if it found that youth proved both X and Y, whereas it would check the second box if it found that youth proved X but not Y, Y but not X, or neither X nor Y. The written order is thus consistent with the court's oral findings that youth had proved Y (public safety) but not X (rehabilitation). Nothing about the written order precludes review of youth's assignment of error.

## STATUTORY CONSTRUCTION

We now turn to the merits. The question presented is one of statutory construction and is therefore a question of law. *State v. Bilbao*, 332 Or App 231, 235, 549 P3d 593 (2024);

*Dept. of Human Services v. S. S.*, 283 Or App 136, 146, 388 P3d 1178 (2016) ("[W]hether the juvenile court applied the correct legal standard * * * presents a question of law that we review for legal error."). To resolve that question, we consider text, context, and any useful legislative history, seeking to discern the intent of the enacting legislature. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

As previously mentioned, when a youth has been adjudicated for conduct that would constitute a felony sex crime if committed by an adult, the juvenile court is to hold a hearing on the issue of sex-offender reporting in the six months prior to the termination of juvenile court jurisdiction. ORS 163A.030. To avoid reporting, the youth must prove "by clear and convincing evidence that the [youth] *is rehabilitated and does not pose a threat to the safety of the public.*" ORS 163A.030(7)(b) (emphasis added). Those are factual issues on which the youth must persuade the court. *State v. A. R. H.*, 371 Or 82, 91, 530 P3d 897 (2023).[2] If the youth fails to do so, the court must order the youth to report as a sex offender. ORS 163A.030(7)(b) ("If the court finds that the [youth] has not met the burden of proof, the court shall enter an order requiring the [youth] to report as a sex offender under ORS 163A.025."); ORS 163A.025 (requiring reporting "unless the juvenile court enters an order under ORS 163A.130 or 163A.135 relieving the [youth] of the obligation to report").

The Supreme Court recently left open the very question of statutory construction that is now before us in this case. In *A. R. H.*, a youth sought reversal of an order requiring him to report as a sex offender, arguing that he had met his burden of proof and was entitled to prevail as a matter of law. 371 Or at 88. The Supreme Court disagreed and affirmed the order requiring him to report. *Id.* at 84-85. The court construed ORS 163A.030(7)(b) as part of its analysis. *See id.*

---

[2] If the juvenile court's findings are challenged on appeal, then, absent *de novo* review, we will affirm the findings if there is any evidence in the record to support them. *A. R. H.*, 371 Or at 95-96. In this case, youth is not challenging the findings themselves, but rather the meaning of the words of the statute—that is, the nature of what the court must find, which is why the question presented in this appeal is one of law.

As relevant here, the court concluded that the legislature intended "rehabilitation" and "threat" to have their ordinary meanings, with "rehabilitation" meaning "the act or process, including through therapeutic treatment, of restoring an individual to a useful and constructive place in society," and with "threat" referring to "a source of impending harm," which in this context means the "threat that the youth will commit future sex offenses (or acts that would constitute a sex offense if committed by an adult)." *Id*. at 93-95. Ultimately, the court construed ORS 163A.030(7)(b) as putting the burden on the youth to prove to the juvenile court that it is "highly probable that they have undergone a process of rehabilitation and do not present a risk of committing future sex offenses." *Id*. at 95. The court expressly left open the significance of the compound phrasing of the statutory standard, stating in a footnote:

> "The legislature's use of the conjunction 'and' to join the two required showings set out in ORS 163A.030(7)(b) could suggest that it intended rehabilitation and threat to be distinct concepts and separate showings that the youth is required to prove, or it could suggest that the legislature used both seemingly similar concepts for the sake of emphasis. *See State v. Cloutier*, 351 Or 68, 97, 261 P3d 1234 (2011) (explaining that 'the fact that a proposed interpretation of a statute creates some measure of redundancy is not, by itself, necessarily fatal'); *see also Wittemyer v. City of Portland*, 361 Or 854, 864, 402 P3d 702 (2017) (explaining that '[l]egal terminology often employs synonyms, "sometimes for clarity, sometimes for emphasis"') (quoting *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 397, 737 P2d 595 (1987))). We need not resolve that theoretical question here, because it makes no difference to our analysis of the record in this case."

*Id*. at 92 n 4.

We now address the question that *A. R. H.* left open. We start by examining the disputed text.

Looking solely at the disputed text, the phrase "is rehabilitated and does not pose a threat to the safety of the public" could refer to one unified concept or two separate requirements. The two components of the phrase are not so different as to make them obviously separate and distinct.

*See id.* (describing them as "seemingly similar concepts"). Moreover, both components involve states of being. A phrase consisting of two distinct historical facts, such as "has completed sex offender treatment and has not reoffended in the past three years," necessarily refers to two separate things. A phrase consisting of one historical fact and one state of being, such as "has completed sex offender treatment and is rehabilitated," could refer to one or two things, depending on the relationship between the components. In that example, if the legislature understood the completion of treatment to necessarily result in rehabilitation and added "is rehabilitated" only to emphasize and communicate the significance of treatment, it would intend the phrase to convey a single requirement. By contrast, if the legislature wanted everyone to complete treatment but recognized that treatment does not necessarily result in rehabilitation, and it meant to refer only to people who both completed treatment and were rehabilitated, it would intend two separate requirements— and it could signal that intent in various ways, such as by adding the word "both" ("both has completed sex offender treatment and is rehabilitated") or reversing the order to break the seeming cause-effect relationship ("is rehabilitated and has completed sex offender treatment").

Here, the legislature has compounded two related states of being—one more backward-looking (rehabilitated) and one more forward-looking (not a threat to public safety). As in the example above, the phrase is written in a way that suggests a cause-effect relationship. A person who is "rehabilitated" in the sense of having been restored "to a useful and constructive place in society," *A. R. H.*, 371 Or at 93, would seem, by definition, to no longer pose a threat to public safety. They have been rehabilitated and therefore are no longer a threat to others. One can imagine a broader conceptualization of "rehabilitation," however, whereby a person may be sufficiently rehabilitated to no longer pose a threat to others but not fully rehabilitated in the sense of having achieved an optimal state of personal well-being. Although it is not entirely clear, the juvenile court appears to have taken a broader view of rehabilitation than that described in *A. R. H.* as what the legislature intended.

Given the ordinary meaning of "rehabilitation," and given the seeming cause-effect relationship between the two components of the phrase "is rehabilitated and does not pose a threat to the safety of the public," we view the statutory text as tending to support youth's construction over the state's. That said, both constructions are plausible based on the text alone.

We next consider context, which is particularly helpful in this case. The juvenile sex-offender-reporting statutes are part of the same chapter, ORS chapter 163A, as the adult sex-offender-reporting statutes. The singular purpose of sex-offender reporting is to assist law enforcement in "preventing future sex offenses." ORS 163A.045(1) ("The purpose of ORS 163A.005 to 163A.235 is to assist law enforcement agencies in preventing future sex offenses."); *State v. MacNab*, 334 Or 469, 481, 51 P3d 1249 (2002) (discussing 1991 legislative history identifying that as the purpose of the reporting statutes); *see also* ORS 163A.030(10)(a) (A) (requiring that certain records be provided to the juvenile court prior to the hearing on sex-offender reporting, including sex-offender evaluations and treatment records "and recommendations contained therein *regarding the need for the person to register in order to protect the public from future sex crimes*" (emphasis added)). Reporting is not intended to punish the person—it is a purely regulatory requirement grounded in public safety. *MacNab*, 334 Or at 481-82.

That fundamental purpose informs our construction, confirms what the disputed text hints at, and ultimately leads us to conclude that ORS 163A.030(7)(b) states a single unified standard rather than two separate requirements. If a youth has been sufficiently rehabilitated to no longer pose a threat to public safety, specifically with respect to sexual reoffending, it would make little sense to nonetheless require the youth to report as a sex offender, when the entire purpose of sex-offender reporting is public safety. That strongly supports reading the phrase "is rehabilitated and does not pose a threat to the safety of the public" as a unified requirement in which the two components reinforce one another but the ultimate inquiry is one of public safety. *See A. R. H.*, 371 Or at 92 n 4 (recognizing that the legislature may

build some redundancy into statutory language for clarity, emphasis, or the like). To put it another way, we understand the legislature to have intended rehabilitation as something ultimately subsumed within the concept of no longer posing "a threat to the safety of the public"—rather than intending "rehabilitation" to require something *more* than no longer being a threat to the public. That reading is supported by the text and context, and we have found no legislative history suggesting a different legislative intent.

Having now construed the statute, we turn to the disposition of this case. The juvenile court expressly used a "two-prong test." It also seems to have viewed rehabilitation as requiring something *more* than being "restor[ed] * * * to a useful and constructive place in society," *A. R. H.*, 371 Or at 93, and no longer posing a threat of sexual reoffending. That was legally erroneous for the reasons explained. Based on that error, youth asks us to reverse the order requiring him to report as a sex offender and "remand for entry of an order finding that he met his burden under ORS 163A.030."

We are unpersuaded that is the proper disposition. Youth was not entitled to prevail as a matter of law—only if the court made the requisite finding. *See A. R. H.*, 371 Or at 84-85. As for being entitled to prevail based on the existing finding regarding youth not being a "threat to the public," the juvenile court misunderstood the relationship between rehabilitation and public safety and ultimately made two inconsistent findings. Youth asks that we isolate the finding favorable to him (not a threat), disregard the finding unfavorable to him (not rehabilitated), and treat the former as equivalent to a finding that youth "is rehabilitated and does not pose a threat to the safety of the public." In our view, it is more appropriate that the juvenile court have an opportunity to clarify what it found by reference to the correct legal standard. That is, the juvenile court should make a finding under the unified standard and, in doing so, resolve the inconsistency in its prior findings. That may well lead to youth not having to report; indeed, that is what should happen if the import of the court's prior findings was that youth is sufficiently rehabilitated to no longer pose a threat to the public as to sexual reoffending. The juvenile court

should be permitted to reconcile its own inconsistent findings, however, and thus clarify what it meant. We therefore vacate the order requiring youth to report as a sex offender and remand for reconsideration under the correct statutory standard.

Vacated and remanded.